**Opinion filed May 20, 2010**



In The

# Eleventh Court of Appeals

_____

## No. 11-08-00157-CR

_____

**JOHN MICHAEL GATELY, Appellant**

**V.**

**STATE OF TEXAS, Appellee**

**On Appeal from the 35th District Court**

**Brown County, Texas**

**Trial Court Cause No. CR19181**

## O P I N I O N

The jury convicted John Michael Gately of possession of methamphetamine with the intent to deliver in the amount of four grams or more but less than two hundred grams. Appellant pleaded true to an enhancement allegation, and the jury assessed his punishment at ninety-nine years confinement and a fine of $10,000. The trial court sentenced him accordingly. Appellant presents seven issues for review. We affirm.

### Background

Detective Bruce Spruill, a narcotics investigator for the Brownwood Police Department, received information from a confidential informant that appellant was transporting methamphetamine from the Metroplex to Brownwood. Detective Spruill set up a covert

operation to observe appellant. After receiving information that appellant would be delivering drugs to Brownwood on April 11, 2007, Detective Spruill conducted surveillance of an apartment in Brownwood. At that time, Detective Spruill observed appellant get into the passenger's side of a white, Toyota Scion. Police officers stopped the vehicle. John Phy was driving the vehicle, and appellant was a passenger in the vehicle. Detective Spruill obtained Phy's consent to search the vehicle. During the search, the officers found over twenty-nine grams of methamphetamine in between the driver's seat and a console.

Appellant does not challenge the sufficiency of the evidence to support his conviction. We have reviewed the evidence in its entirety. The State presented overwhelming evidence of appellant's guilt.

### Denial of Challenge for Cause

In his first issue, appellant argues that the trial court erred in failing to excuse a veniremember for cause. Appellant challenged Veniremember Robert Northcutt for cause. The trial court denied appellant's challenge. Appellant did not use a peremptory strike on Northcutt. Rather, appellant used his peremptory strikes on other veniremembers and then requested an additional peremptory strike for the purpose of striking Northcutt. The trial court denied appellant's request for an additional strike, and Northcutt served on the jury.

To preserve error on a trial court's denial of a challenge for cause, an appellant must take the following steps: (1) assert a clear and specific challenge for cause; (2) use a peremptory strike on the complained-of veniremember; (3) exhaust his peremptory strikes; (4) request additional peremptory strikes; (5) identify an objectionable juror; and (6) claim that he would have struck the objectionable juror with a peremptory strike if he had one to use. *Allen v. State*, 108 S.W.3d 281, 282 (Tex. Crim. App. 2003). Because appellant did not use a peremptory strike on Northcutt, appellant failed to preserve error on his first issue. Appellant's first issue is overruled.

### Recorded Statement of Phy

Appellant contends in his second issue that the trial court erred in admitting the statement of Phy, a codefendant. The stop of the vehicle was recorded by equipment in Brownwood Police Officer John C. Harper's patrol vehicle. During Officer Harper's testimony, the State sought to introduce into evidence the DVD of the stop. The DVD lasts over an hour. During the vast majority of time, the DVD is silent. However, the DVD includes a few statements made by Phy

about the methamphetamine that the officers found in the car. Phy stated, "It's not my dope. He's the dealer." Phy also stated, "I can tell you people where it's going to." Appellant objected to the admissibility of Phy's statements on the ground of hearsay. The trial court admitted the DVD over appellant's objection. The DVD was not played for the jury when the trial court admitted it into evidence.

We note that the record is not clear as to whether the jury watched the DVD of the stop. During jury deliberations, the jury sent the trial court a note asking whether it could see the DVD of the stop. The trial court suggested sending a laptop into the jury room so that the jurors could watch the DVD. Neither party objected to the trial court's suggestion. The record shows that this discussion occurred at 1:22 p.m. At 2:08 p.m., the trial court announced that the jury had reached a verdict. The jury could not have watched the entire DVD during this forty-six minute time period. However, for the purposes of addressing appellant's issue, we will assume that the jury watched the portions of the DVD containing Phy's statements.

Phy testified at trial. Phy said that he agreed to drive appellant to Brownwood. Phy said that, in exchange for the ride to Brownwood, appellant promised to give him gas and cigarettes. Phy testified that appellant hid drugs in the car before they left for Brownwood. He testified that the drugs were about the size of a softball. Phy believed that the drugs were methamphetamine. He testified that, when they were about halfway to Brownwood, appellant retrieved the drugs and started handling them inside the car. Phy said that, when they arrived in Brownwood, he drove to a house and appellant got out of the car. Phy testified that appellant took the drugs with him and then got into a maroon, Chevrolet van with a woman. Phy said that he followed the van to an apartment complex and then waited outside for appellant. He said that appellant returned to the car and that they left the apartment complex. Phy testified that the police surrounded them and pulled them over. According to Phy, appellant said, "We're going to prison for a long time." Phy testified that appellant shoved the drugs between the seats. Phy said that he gave a police officer consent to search the car.

Even if the trial court erred in admitting the portions of the DVD containing Phy's statements, appellant would not be entitled to a reversal of his conviction unless the error constituted reversible error under Rule 44.2 of the Rules of Appellate Procedure. TEX. R. APP. P. 44.2. A violation of the evidentiary rules resulting in the erroneous admission of evidence is nonconstitutional error and is, therefore, subject to a harm analysis under Rule

3

44.2(b). *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). Under Rule 44.2(b), we are to disregard any error unless it affected appellant's substantial rights. A substantial right is affected when the error had a substantial and injurious effect or influence on the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).

Phy's statements on the DVD were consistent with his trial testimony. In fact, Phy's trial testimony provided much more detail than his statements on the DVD. The admission of Phy's statements on the DVD was harmless because those statements were cumulative of his trial testimony. *Couchman v. State*, 3 S.W.3d 155, 160 (Tex. App.—Fort Worth 1999, pet. ref'd); *see Anderson v. State*, 717 S.W.2d 622, 628 (Tex. Crim. App. 1986). Under these circumstances, the error, if any, in admitting the DVD was harmless. Appellant's second issue is overruled.

*Recorded Statement of Appellant*

In his third issue, appellant complains that the trial court erred in admitting his recorded statement. Detective Spruill took the recorded statement from appellant. Appellant objected to the admissibility of the statement on the ground that he did not knowingly, intelligently, and voluntarily waive his right to counsel before providing the statement. The trial court admitted the statement, and it was played for the jury. The recording of appellant's statement establishes that, before appellant gave his statement, Detective Spruill gave appellant the warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966), and TEX. CODE CRIM. PROC. ANN. art. 38.22 (Vernon 2005), including the warning that appellant had the right to have a lawyer present to advise him prior to and during any questioning. Appellant acknowledged in the trial court that Detective Spruill gave him the necessary warnings. However, appellant argued that the statement was inadmissible because he did not expressly waive his right to counsel.

Neither a written nor an oral express waiver is required to support a finding that an accused waived his *Miranda* rights. *Joseph v. State*, No. PD-1111-08, 2010 WL 625072, at *3 (Tex. Crim. App. 2010); *Watson v. State*, 762 S.W.2d 591, 601 (Tex. Crim. App. 1988). A valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained. *Miranda*, 384 U.S. at 475. However, a waiver need not assume a particular form, and in some cases, a "waiver can be clearly inferred from the actions and words of the person interrogated." *Joseph*, 2010 WL 625072, at *3 (quoting *North Carolina v. Butler*, 441 U.S. 369, 373 (1979)). The question is not

4

whether an accused "explicitly" waived his *Miranda* rights, but whether he did so knowingly, intelligently, and voluntarily. *Joseph*, 2010 WL 625072, at \*3. Whether an accused waived his *Miranda* rights is determined from the totality of the circumstances. *Id.*; *Castillo v. State*, 616 S.W.2d 620, 622 (Tex. Crim. App. 1981); *Turner v. State*, 252 S.W.3d 571, 583 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd).

After Detective Spruill advised appellant of his rights, Detective Spruill asked appellant, "Do you understand your rights?" Appellant responded, "Yes, sir." Detective Spruill also asked appellant whether he had any questions about his rights, and appellant responded, "No, sir." Detective Spruill then asked appellant, "Do you want to talk to me?" Appellant responded, "I would like to talk to you." Appellant told Detective Spruill that "[his] head [was] pounding," but appellant continued the interview. Later, appellant said, "I'm willing to help wherever I can." Following this statement, appellant said, "Right now my head is banging." However, appellant again continued the interview.

Although appellant never expressly waived his rights, appellant willingly participated in the interview. Based on the totality of the circumstances, a waiver can clearly be inferred from appellant's words and actions. The recorded interview establishes that appellant knowingly, intelligently, and voluntarily waived his rights. Appellant's third issue is overruled.

In his seventh issue, appellant contends that the trial court erred in admitting evidence that he exercised his constitutional right to terminate the interview. About seventeen minutes into the interview, appellant stated, "I've been bullshitting." He also stated, "I want to be straight forward." He requested Detective Spruill to do the interview the next day. Detective Spruill said that he could not guarantee that he could talk with appellant the next day. Later, appellant again said that his head was pounding. Detective Spruill said "okay" and concluded the interview.

Detective Spruill testified that, at some point, appellant requested to cease the interview and that he ceased it upon appellant's request. Appellant objected to Detective Spruill's testimony on the ground that it was an improper comment on his right to terminate the interview. Evidence of the invocation of the constitutional right to terminate an interview is inadmissible. *Cooper v. State*, 961 S.W.2d 222, 226 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd). The State may not inform the jury that the accused invoked his constitutional rights because the jury

may improperly consider the invocation as an inference of guilt. *Hardie v. State*, 807 S.W.2d 319, 322 (Tex. Crim. App. 1991).

Appellant's recorded interview does not indicate that he was invoking his constitutional right to terminate the interview. A police officer need not stop questioning a suspect unless the suspect's invocation of rights is unambiguous. *Ramos v. State*, 245 S.W.3d 410, 418 (Tex. Crim. App. 2008); *Dowthitt v. State*, 931 S.W.2d 244, 257 (Tex. Crim. App. 1996). The officer is not required to clarify ambiguous remarks. *Ramos*, 245 S.W.3d at 418; *Dowthitt*, 931 S.W.2d at 257. In *Dowthitt*, the accused stated the following during a statement: "I can't say more than that. I need to rest." The Court of Criminal Appeals held that these statements were not an unambiguous invocation of the right to remain silent. *Dowthitt*, 931 S.W.2d at 257. Likewise, appellant did not unambiguously invoke his right to terminate the interview. At most, the recorded statement indicates that appellant wanted to stop the interview for the day because his head was pounding and then continue the interview the next day. Because appellant did not exercise his constitutional right to terminate the interview, Detective Spruill's testimony was not improper. Appellant's seventh issue is overruled.

### *Trial Court's Statements to Witness*

In his fourth issue, appellant asserts that the trial court erred in causing Ruben Gonzales Jr. to testify under duress. Gonzales and appellant were former cellmates. The State called Gonzales as a witness. He immediately informed the trial court that he did not want to testify. The trial court excused the jury and addressed the issue. Gonzales had pleaded guilty to a felony. As part of the plea agreement, Gonzales had agreed to testify in appellant's case. The trial court admonished Gonzales of the potential consequences of his failure to testify. The trial court also appointed counsel to advise Gonzales of his rights. The prosecutor questioned Gonzales outside of the jury's presence. Gonzales's court-appointed attorney was present during this questioning. The trial resumed the next morning. Gonzales's attorney was present in court. In response to questioning by the prosecutor, Gonzales said that he had decided to testify. Gonzales then testified before the jury.

The record does not support appellant's argument that the trial court improperly caused Gonzales to testify. The trial court appointed counsel for Gonzales. The record demonstrates that Gonzales voluntarily testified. We note that Gonzales never invoked his Fifth Amendment right against self-incrimination. Instead, he apparently did not want to testify because he was

6

concerned about the way he might be treated in prison if he did. However, for the purposes of our analysis, we will assume that Gonzales's testimony was sufficient to invoke his right against self-incrimination. If a witness invokes his right against self-incrimination, the trial court cannot compel him to answer the question unless it is perfectly clear, from a careful consideration of all the circumstances in the case, that he is mistaken in asserting the privilege and that the answer cannot possibly tend to incriminate him. *Grayson v. State*, 684 S.W.2d 691, 696 (Tex. Crim. App. 1984); *Boler v. State*, 177 S.W.3d 366, 371 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). In this case, the prosecutor did not ask Gonzales any incriminating questions, and Gonzales's answers to the prosecutor's questions did not incriminate him. Therefore, assuming that Gonzales invoked his right against self-incrimination, the trial court properly compelled him to testify. In addition, appellant has not provided this court with any authority demonstrating that he has a right to complain about an alleged violation of Gonzales's right against self-incrimination. Appellant's fourth issue is overruled.

*Prosecutor's Statements During Jury Arguments*

In his fifth issue, appellant asserts that the trial court erred in allowing the prosecutor to comment on his failure to testify during jury arguments in the guilt/innocence phase and the punishment phase. A comment on a defendant's failure to testify offends the Texas and United States Constitutions, as well as Texas statutory law. U.S. CONST. amend. V; TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. ANN. art. 38.08 (Vernon 2005). A prosecutor's comment amounts to an impermissible comment on a defendant's failure to testify only if, when viewed from the jury's standpoint, the comment is manifestly intended to be, or is of such character that a typical jury would naturally and necessarily take it to be, a comment on the defendant's failure to testify. *Cruz v. State*, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007); *Bustamante v. State*, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001).

During jury argument in the guilt/innocence phase, the prosecutor argued that the confidential informant had received about two grams of methamphetamine from appellant. Dennis Mason Arial was the confidential informant. He testified at trial. Arial said that appellant gave him methamphetamine and that he later gave it to Detective Spruill. Detective Spruill testified that Arial gave him methamphetamine. The prosecutor stated in his argument that "[t]here is nothing to controvert the testimony of Mr. Arial, that that is where he got the drugs from." Appellant contends that this statement was a comment on his failure to

7

testify. However, viewed in context, the prosecutor's statement appears to refer to a lack of evidence that Arial obtained the methamphetamine after he left appellant's presence and was not a comment on appellant's failure to testify. This conclusion is evidenced by the prosecutor's argument immediately before the above-quoted statement:

> So, from there, [appellant] remains and Mr. Arial departs. [Arial] travels over to Walgreen's where he meets Bruce Spruill and hands over to him the drugs, that almost 2 grams of methamphetamine in the cellophane wrapper that has been admitted and described for you.
>
> Now, Mr. Arial was searched before this began. The car was new. It was searched. He was searched. No drugs found. Where in the world did the drugs come from if they didn't come from [appellant] as Mr. Arial says? Did he go to somebody on the street corner, buy some drugs? Would that make sense? Of course not. Okay? It's as simple as that.

Evidence as to whether Arial obtained the methamphetamine after leaving appellant's presence would not be provided through the testimony of appellant because appellant would not know what Arial did after leaving his presence. Therefore, no relationship existed between the complained-of statement by the prosecutor and appellant's failure to testify. We conclude that the prosecutor's statement was not manifestly intended to be, nor was of such character that a typical jury would naturally and necessarily take it to be, a comment on the defendant's failure to testify. *Cruz*, 225 S.W.3d at 548. As such, the statement did not constitute an impermissible comment on appellant's failure to testify.

After appellant objected to the prosecutor's statement at trial, the trial court stated as follows:

> I will overrule the objection, but will emphasize, once again, ladies and gentlemen of the jury, and admonish all counsel that everybody in a criminal case who is accused of a crime has an absolute constitutional right not to testify. It cannot be held against them in any way. You cannot comment on it or allude to it, period.

Even if the prosecutor's statement constituted a comment on appellant's failure to testify, the trial court's instruction to the jury cured any harm caused by the statement. *Moore v. State*, 999 S.W.2d 385, 405-06 (Tex. Crim. App. 1999) (Except in the most blatant cases, an instruction to disregard a comment on the defendant's failure to testify will cure any harm caused by the comment.).

During jury argument in the punishment phase, the prosecutor commented on appellant's work history. The following exchange took place:

[PROSECUTOR]: Of all the evidence that was presented, the only evidence of his workmanship, the ability to work in a legitimate job was that possibly sometime in 2006, he worked --

[DEFENSE COUNSEL]: I object. It's a comment on the failure [of] the Defendant to testify and give forth that evidence.

THE COURT: Overruled.

[PROSECUTOR]: That he worked for a period of 2000, 2006 hanging some wallpaper. Other than that, the only evidence you have is that he sold drugs, distributed drugs for a living.

[DEFENSE COUNSEL]: Judge, same objection.

THE COURT: Overruled.

In the above argument, the prosecutor was referring to testimony by appellant's family members about his employment history. Appellant contends that the prosecutor's statements commented on his failure to testify because they called attention to testimony that only he could provide. However, any number of individuals, including former employers, coworkers, family members, or acquaintances, could have provided testimony about appellant's employment history. The prosecutor's statements were not a comment on appellant's failure to testify. Appellant's fifth issue is overruled.

*Evidence of Extraneous Offense*

In his sixth issue, appellant asserts that, in the guilt/innocence phase, the trial court erred in admitting evidence of extraneous conduct involving his delivery of drugs to Sady Huro. Gonzales testified about conversations he had with appellant when they were cellmates. Gonzales said that appellant told him that, on the day he was arrested, he had brought between thirty-four and forty grams of methamphetamine into town. Appellant also told Gonzales that he had planned to drop off the methamphetamine to a lady named Sady. According to Gonzales, appellant made it clear that Sady was his customer. Gonzales also said that appellant told him that he had dropped off drugs to Sady a couple of weeks before he was arrested.

Appellant did not object to Gonzales's testimony about his delivery of drugs to Sady Huro. To preserve error for appellate review, the complaining party must make a timely, specific

9

objection in the trial court and obtain a ruling on the objection. TEX. R. APP. P. 33.1(a); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002); *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995). Appellant did not preserve the alleged error for review.

Additionally, even if appellant had objected to Gonzales's testimony at trial, the trial court would not have abused its discretion in allowing the testimony. Gonzales testified about one extraneous offense in the portion of the record cited by appellant in his brief. Specifically, Gonzales testified that appellant told him that he had delivered drugs to Sady Huro a couple of weeks before his arrest. Rule 404(b) of the Rules of Evidence provides that evidence of extraneous offenses is not admissible "to prove the character of a person in order to show action in conformity therewith." TEX. R. EVID. 404(b). However, Rule 404(b) allows evidence of extraneous offenses if the evidence has relevance apart from character conformity. For example, extraneous offense evidence may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Rule 404(b); *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005); *Carter v. State*, 145 S.W.3d 702, 707 (Tex. App.—Dallas 2004, pet. ref'd). Evidence that appellant had delivered drugs to Sady Huro about two weeks before his arrest was relevant to show that, on the date of his arrest, he possessed the methamphetamine with the intent to deliver. *See Payton v. State*, 830 S.W.2d 722, 730 (Tex. App.—Houston [14th Dist.] 1992, no pet.) (Evidence that the defendant sold drugs two days before his arrest was relevant to whether he possessed drugs with intent to deliver). Therefore, the extraneous offense evidence was admissible. Appellant's sixth issue is overruled.

*This Court's Ruling*

The judgment of the trial court is affirmed.

TERRY McCALL

JUSTICE

May 20, 2010

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

10