COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| BRANDON WELLS, | § | No. 08-09-00110-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 399th District Court |
| THE STATE OF TEXAS, | § | |
| | | of Bexar County, Texas |
| Appellee. | § | |
| | | (TC# 2007CR3253) |
| | § | |

**O P I N I O N**

Appellant, Brandon Wells, was convicted of murder and sentenced to fifty years' imprisonment and a $10,000 fine. In four issues on appeal, Appellant complains of the admission of certain evidence and the trial court's denial of his motions for directed verdict and mistrial. We affirm.

**BACKGROUND**

Sandra Bush and at times, her son, Larry Drummer III, the victim, were living with Appellant at his grandmother's home. On January 12, 2007, Appellant and the victim went to eat lunch with Sandra at 12:30 p.m. The victim was very talkative during lunch and acted normal. Sandra returned to work between 1 and 1:15 p.m. When Appellant and the victim left, Sandra saw their car stop for five minutes and then drive off. She could not see inside the car because of the tinted windows.

Appellant and the victim were alone in the car from 1:30 p.m. until 2 p.m., when Appellant picked up Samuel Cordier. Cordier thought the victim was asleep in the backseat as he never made any noises. Appellant then picked up Cordier's uncle, Anthony Sylve. All three arrived at Appellant's grandmother's house around 3:45 p.m. to 4 p.m. There, Appellant asked a neighbor to

watch the victim, but when the neighbor found the victim limp and something wrong with him, Appellant refused to give him to the neighbor and told her to leave. Appellant then took the victim inside his grandmother's house.

When Appellant left, the neighbor told Appellant's grandmother that something was wrong with the victim, and they both ran back to where Appellant placed him and discovered that he was foaming at the mouth and had urinated on himself. They took him outside and called 911 around 4 p.m.

The paramedics dispatched to the scene found the victim clenching his jaw and posturing, that is, his arms were flexed inward with his hands in fists, and his legs were straight out with his feet turned inward. His condition indicated a head injury. On the Glasgow Coma Scale, the paramedic believed the victim was a five out of fifteen, and anything less than an eight is considered critical. Although the victim was unconscious, he was breathing on his own, and the paramedics assisted with his breathing to reduce the risk of cardiac arrest.

A CT scan showed a severe closed head injury, "a horrible, horrible brain injury." Dr. Dent, the treating physician, believed that the injury occurred approximately one to two hours before the paramedics arrived. Blood filled the spaces on both sides of the victim's head, and the brain was so swollen that it lost its normal structure. A CAT scan showed cellular death on both sides of the victim's head, which was non-survivable. And indeed, the victim died less than twenty-four hours after arriving at the hospital.

The medical examiner found fresh bruising to the left side of the victim's face and cheek, and to the left eye. She also found fresh bruising to the head, which she opined was caused by the victim being struck by something blunt or being struck against something three to four times. Dr. Dent testified that the amount of force required to cause the injury would be a car wreck occurring at a

speed faster than normal highway speed. The only way the victim could have received the injury was from massive, severe force, that a two-year-old child could not do on his own. The medical examiner determined that the severe blow to the victim's head caused his death. Based on witnesses' statements, the police believed the injury occurred between 1:30 p.m., when Sandra returned to work, and 4 p.m., when the ambulance was summoned.

Wells gave two oral statements to the police. In the first, he initially claimed that his five-year-old cousin hit the victim in the eye and scratched his face, causing the bruising to the face. Wells later alleged that when he returned Sandra to work, the victim was jumping around in the backseat and he either hit his head on some jumper cables or against the door. He also contended that the victim could have hit his head on the dresser by the bed. Appellant denied that he ever struck the victim.

In the second oral statement, Appellant claimed that the injury was caused when Sandra "whooped" the victim at lunch or when Sylve opened the car door and the victim fell partially out, striking his head on the door panel. He insisted that he never touched the victim in any way, nor would he ever harm him.

While in jail, Appellant met an inmate named Jose Ramirez. Although Appellant initially told him that he was there on drug charges, he later admitted that he was there for injury to a child. Appellant told Ramirez that if "worse had come to worse, you know what I mean, that he would act crazy, you know, like – like Andrea Hays [sic] or something like that for what he did or something." Ramirez believed that statement was a confession that he committed the crime and intended to blame it on Sandra.

## DISCUSSION

Appellant raises four issues on appeal. The first contends that the trial court abused its

discretion by admitting two video recordings of his oral statements to the detectives, the second alleges that the trial court erred by denying his motion for directed verdict, the third complains of the trial court's failure to grant a mistrial, and the fourth alleges that extraneous offenses were admitted without first having been proven beyond a reasonable doubt. After reviewing the briefs, law, and the record, we find Appellant's second and third issues not preserved for our review, and no merit in his first and fourth issues.

*Unpreserved Error*

We address Appellant's second and third issues first. In his second issue, Appellant contends that the trial court erred by "denying [his] motion for an instructed verdict because the medical evidence did not comport with the State's allegations, making the evidence factually insufficient." However, appellate challenges to directed verdicts are reviewed for legal sufficiency, not factual sufficiency. *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996); *Noyola v. State*, 25 S.W.3d 18, 19 (Tex. App. – El Paso 1999, no pet.). Appellant, seemingly recognizing his fallacy, quotes the legal-sufficiency standard; however, he also quotes the factual-sufficiency standard. Appellant then engages in a factual-sufficiency discussion. He never provides any discussion from a legal-sufficiency standpoint. Given the wording of Appellant's second issue, his citations to both legal and factual sufficiency standards of review, and his sole discussion of the factual sufficiency of the evidence, we cannot determine if Appellant is challenging the directed verdict or the factual sufficiency of the evidence to support his conviction. In short, Appellant's second issue is multifarious, and we decline to address it. *See Russell v. State*, 598 S.W.2d 238, 245 (Tex. Crim. App.), *cert. denied*, 449 U.S. 1003, 101 S.Ct. 544, 66 L.Ed.2d 300 (1980); *Taylor v. State*, 190 S.W.3d 758, 764 (Tex. App. – Corpus Christi 2006), *rev'd on other grounds*, 233 S.W.3d 356 (Tex. Crim. App. 2007); *Parra v. State*, 935 S.W.2d 862, 875 (Tex. App. – Texarkana 1996, pet. ref'd)

(cases declining to address multifarious points of error).

In his third issue, Appellant contends that the trial court erred by overruling his motion for mistrial, claiming that the mistrial was warranted when Detective Damiani informed the jury that he confessed to an inmate. Specifically, Appellant claims that Detective Damiani was lying when he made the complained-of statement. However, at trial, Appellant's sole objection to the statement was that the inmate had not yet testified. Appellant never raised his appellate complaint to the trial court, that is, that Detective Damiani committed perjury. Because Appellant's complaint on appeal does not comport with his objection at trial, we find his third issue not preserved for our review. *See Gallo v. State*, 239 S.W.3d 757, 767-68 (Tex. Crim. App. 2007); *Sarringar v. State*, Nos. 2-02-288-CR, 2-02-289-CR, 2003 WL 21404819, at *1 (Tex. App. – Fort Worth Jun. 19, 2003, pet. ref'd) (mem. op., not designated for publication) (cases declining to address trial court's failure to grant a mistrial when appellant's complaint on appeal differed from his trial objection).

Moreover, we find Appellant's second and third issues inadequately briefed. In his second issue, Appellant merely sets out the legal-sufficiency standard for reviewing directed verdicts but then fails to provide any supporting argument explaining why the evidence was legally insufficient and the directed verdict should have been granted; rather, he solely discusses whether the evidence was factually sufficient to support his conviction. But as noted above, appellate challenges to directed verdicts are reviewed for legal sufficiency, not factual sufficiency. *Williams*, 937 S.W.2d at 482; *Noyola*, 25 S.W.3d at 19. Because Appellant has failed to provide any supporting argument or analysis discussing the legal sufficiency of the evidence, we find Appellant's second issue to be inadequately briefed. *See Narvaiz v. State*, 840 S.W.2d 415, 432 (Tex. Crim. App. 1992); *Foster v. State*, 101 S.W.3d 490, 499 (Tex. App. – Houston [1st Dist.] 2002, no pet.) (cases concluding issue inadequately briefed when appellant offered no argument for the issue raised).

Similarly, in his third issue, Appellant sets out the applicable standard of review for mistrials and cites to case law addressing perjured testimony. However, Appellant never engages in any analysis, discussion, or argument in support of the cases he cites, explaining how they apply to the facts in his case. Merely setting out a general legal principle with supporting case law is not sufficient to adequately brief a point of error. Rather, Appellant bears the burden of providing a supporting argument, analyzing the cases cited and applying those cases to the facts at hand. *See* TEX. R. APP. P. 38.1(i); *Rocha v. State*, 16 S.W.3d 1, 20 (Tex. Crim. App. 2000). We will not make his arguments for him. *Wyatt v. State*, 23 S.W.3d 18, 23 n.5 (Tex. Crim. App. 2000). Because Appellant has not graced us with any argument, we conclude his second issue is inadequately briefed, as well. *See Wood v. State*, 18 S.W.3d 642, 650-51 (Tex. Crim. App. 2000); *McDuff v. State*, 939 S.W.2d 607, 613 (Tex. Crim. App.), *cert. denied*, 522 U.S. 844, 118 S.Ct. 125, 139 L.Ed.2d 75 (1997); *Turner v. State*, 4 S.W.3d 74, 80-81 (Tex. App. – Waco 1999, no pet.) (cases concluding appellant waived issue by failing to adequately develop his argument).

Having determined Appellant's second and third issues are not preserved for our review, we overrule the same.

*Videotape Recordings of Statements*

We now turn to Appellant's first issue, which contends that the trial court abused its discretion by failing to suppress his videotaped statements. According to Appellant, the statements lacked the requisite statutory warnings. We disagree.

Article 38.22 proscribes the admissibility of oral statements made during custodial interrogation unless (1) those statements were recorded and (2) prior to making the statements but during the recording, the accused was warned of his rights and knowingly, intelligently, and voluntarily waived those rights. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3 (Vernon 2005).

Those warnings include that:

> (1) [the accused] has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;
>
> (2) any statement he makes may be used as evidence against him in court;
>
> (3) he has the right to have a lawyer present to advise him prior to and during any questioning;
>
> (4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and
>
> (5) he has the right to terminate the interview at any time[.]

*Id*. at 38.22, § 2 (Vernon 2005).

We have reviewed both videotaped statements, and both tapes reflect that the detectives duly warned Appellant of his right to remain silent, that any statement made may be used as evidence against him in court, of his right to have a lawyer present, to employ a lawyer, or to have a lawyer appointed, and of his right to terminate the interview at any time.[1] Because all requisite warnings appear on the videotape, Appellant has not shown that the statements fail to meet the admissibility requirements of Article 38.22.

Nevertheless, Appellant asserts that the statute imposes an additional duty on the police to explicitly ask the accused whether he knowingly, voluntarily, and intelligently waived those rights. However, after Appellant filed his brief, the Court of Criminal Appeals reiterated "'that neither a written nor an oral express waiver is required'" before a statement is admissible under the mandates of article 38.22. *See Joseph v. State*, 309 S.W.3d 20, 24 (Tex. Crim. App. 2010) (quoting *Watson*

---

[1] We pause to note that Appellant was not arrested until after he gave the first oral statement. Thus, article 38.22 would not apply to the first statement as it was not the result of custodial interrogation. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3; *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007). However, the State did not argue that Appellant was not in custody during the first statement at trial, nor does it argue that proposition on appeal; rather, the State assumes that if he was in custody, there was no violation. We agree.

*v. State*, 762 S.W.2d 591, 601 (Tex. Crim. App. 1988)); *Barefield v. State*, 784 S.W.2d 38, 40-41 (Tex. Crim. App. 1989) (noting that the oral confession statute does not require an "express verbal statement from an accused that he waives his rights prior to giving the statement"), *overruled on other grounds, Zimmerman v. State*, 860 S.W.2d. 89, 94 (Tex. Crim. App. 1993); *State v. Oliver*, 29 S.W.3d 190, 192 (Tex. App. – San Antonio 2000, pet. ref'd) (noting that there is no "additional language . . . required before a trial court could infer the defendant had waived his rights pursuant to art. 38.22"). Rather, that waiver may simply be "'inferred from the actions and words of the person interrogated.'" *Joseph*, 309 S.W.3d at 24-25 (quoting *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979)). But that waiver must still be knowingly, intelligently, and voluntarily made. *Joseph*, 309 S.W.3d at 24.

In evaluating whether a waiver is knowingly, intelligently, and voluntarily made, we employ a two-part test, asking: (1) whether the relinquishment of the right was voluntary by determining whether it the product of a free and deliberate choice rather than intimidation, coercion, or deception; and (2) whether the waiver was made with full awareness of the nature of the rights being abandoned and the consequences of the decision to abandon it. *Joseph*, 309 S.W.3d at 25 (citing *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)). "Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Moran*, 475 U.S. at 421. In reviewing the totality of the circumstance, we may consider the defendant's background, experience, and conduct. *Joseph*, 309 S.W.3d at 25 (citing *Fare v. Michael C.*, 442 U.S. 707, 725, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979)).

The totality of the circumstances surrounding the interrogations show Appellant's waiver, in both instances, was voluntary. Immediately after being warned by the detective that he had the

right to remain silent and that he did not have to make any statement to anyone, Appellant willingly participated in two interrogations, the first lasted one hour, and the second lasted twenty-five minutes. Neither recording reflects that Appellant ever asked that the interrogations cease. Further, the record does not show any evidence of intimidation or coercion, that is, that the detectives resorted to physical or psychological pressure to elicit statements, or make any promises that could have possibly jeopardized the voluntariness of Appellant's statement. The parties remained calm throughout the entire interrogation process, and Appellant did not budge from his story that he never touched the victim. *See Joseph*, 309 S.W.3d at 25-26 (finding voluntary statement under similar circumstances).

Turning to the awareness prong, we also find that the totality of the circumstances surrounding the interrogations show Appellant's waiver was made with full awareness of both the nature of the rights being abandoned and the consequences of the decision to abandon them. In the first interview, the detectives gave all the required warnings mandated by article 38.22, including that Appellant did not have to say anything, and asked Appellant if he understood those rights. Appellant answered affirmatively and signed a document, stating that he understood those rights. Appellant then freely answered the questions posed by the detectives. Similarly, in the second interview, the detective gave the required warnings and asked if Appellant understood those rights. Again, Appellant answered affirmatively and freely answered the detective's questions. As the Court of Criminal Appeals noted in Joseph, "[t]he warnings read to Appellant made him fully aware of the rights set forth in *Miranda* and Article 38.22, as well as the consequences of abandoning those rights." *Joseph*, 309 S.W.3d at 27. By indicating his understanding of the rights and then freely answering the detectives questions without ever asking the interviews to cease, Appellant's conduct undoubtedly demonstrated his awareness of his rights and knowing waiver of those rights. *See*

*Gately v. State*, No.11-08-00157-CR, — S.W.3d —, 2010 WL 1999684, at *3 (Tex. App. – Eastland May 20, 2010, no pet. h.) (not yet reported) ("Although appellant never expressly waived his rights, appellant willingly participated in the interview. Based on the totality of the circumstances, a waiver can clearly be inferred from appellant's words and actions. The recorded interview establishes that appellant knowingly, intelligently, and voluntarily waived his rights.").

Because the recorded statements contained the requisite warnings, and because Appellant knowingly, intelligently, and voluntarily waived those rights, his recorded oral statements were admissible. Issue One is overruled.

*Unadjudicated Extraneous Offenses*

Appellant's fourth and final issue contests the admissibility of two unadjudicated extraneous offenses at the punishment phase of the trial. The first occurred on July 3, 2006, when an officer learned from a confidential informant and another arrestee that Appellant was using a .45 handgun and SKS rifle to rob drug dealers in the area. The officer then drove to a specified location and observed a vehicle described by the informant. A search of the vehicle revealed no weapons; however, a consented-to search of the apartment resulted in the seizure of marijuana, baggies of cocaine and heroin packaged for sale, the .45 handgun, and the SKS rifle, all of which Appellant claimed were his.

The second extraneous offense occurred on July 21, 2007. There, the officers observed an unlit license plate on a vehicle, and after activating the patrol car's emergency lights, the vehicle entered a parking lot and accelerated, jumped curbs, and ran over cones to evade the police. When the vehicle stopped, its six occupants, including Appellant, fled on foot. The officers observed Appellant throw a .223 caliber assault rifle underneath the vehicle before running away, although he quickly surrendered soon thereafter. The judge of the 226th District Court later ordered the

weapon released to David Dilley, Appellant's defense attorney in the case.

According to Appellant, both extraneous offenses were inadmissible as the State failed to establish his guilt to either beyond a reasonable doubt. For support, Appellant notes that the State only charged him with possession of marijuana for the first offense, not unlawfully carrying of a weapon, nor could the State prove the second offense without the weapon. We disagree.

Section 3 of article 37.07 governs the admissibility of evidence at punishment. *Haley v. State*, 173 S.W.3d 510, 513 (Tex. Crim. App. 2005). Under that section, evidence may be offered as to any matters the court deems relevant including evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt to have been committed by the defendant or for which he could be held criminally responsible. TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (Vernon Supp. 2009). Whether an accused has actually been charged with or finally convicted of a crime does not matter. *Id*. Nor does it matter that the act was not actually a criminal offense or that the elements of a crime necessary for a finding of guilt cannot be established. *Haley*, 173 S.W.3d at 514-15. Rather, it simply must be shown beyond a reasonable doubt that the accused was involved in the act itself. *Id*. As the Court of Criminal Appeals noted, the question at punishment is "not whether the defendant has committed a crime, but instead what sentence should be assessed." *Id*. at 515.

Here, Appellant does not dispute that he was involved in the complained-of unadjudicated acts or that evidence of those acts was not relevant. Instead, he asserts the State failed to prove beyond a reasonable doubt the elements of the potential criminal offenses. However, the State was not required to make that proof. *Id*. at 514-15. Through its witnesses, the State met its burden of proving Appellant was involved in the two unadjudicated acts.[2] This was all the State was required

---

[2] Appellant notes that in the first act, the officers did not arrest him for unlawfully carrying a weapon. However, the weapons were certainly same transaction, contextual evidence of whether Appellant could be attributed to the bad acts of aggravated robbery, possession of marijuana, or possession with intent to deliver cocaine or heroin.

to do.  *Id.*; *Coy v. State*, No. 2-09-113-CR, 2010 WL 522649, at *3 (Tex. App. – Fort Worth Feb. 11, 2010, pet. ref'd) (mem. op., not designated for publication); *Meyer v. State*, No. 05-05-00900-CR, 2007 WL 2052125, at *8 (Tex. App. – Dallas July 19, 2007, pet. ref'd) (op., not designated for publication).  Thus, we find Appellant's complaint that the evidence of the unadjudicated acts was inadmissible is without merit and overrule his fourth issue.

## CONCLUSION

Having overruled Appellant's issues, we affirm the trial court's judgment.


GUADALUPE RIVERA, Justice

July 30, 2010

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)

---

*See* TEX. PENAL CODE ANN. § 29.03(a)(2) (Vernon 2003) (aggravated robbery); TEX. HEALTH & SAFETY CODE ANN. § 481.121 (Vernon  2010) (possession of marijuana); TEX. HEALTH & SAFETY CODE ANN. § 481.112 (Vernon 2010) (possession with intent to deliver); *Wilson v. State*, 132 S.W.3d 695, 698 (Tex. App. – Amarillo 2004, pet. ref'd.) (deeming as "rather settled" the nexus between the drug trade and weapons); *see also Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993) (providing that same transaction, contextual evidence is admissible).  In the second act, Appellant contends that the State cannot prove the offense without the weapon.  But the State is not required to produce a weapon used in an offense to convict an accused, and in any case, whether the State could produce the weapon does not mean that bad act was not attributable to Appellant.  *See Haley*, 173 S.W.3d at 514-15 (State only has to prove bad act was attributable to accused); *Gomez v. State*, 685 S.W.2d 333, 336 (Tex. Crim. App. 1985) (State not required to produce the weapon to sustain conviction).