**Opinion filed March 7, 2013**



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00076-CR
_____

## REGINALD HAWKINS, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**

**Brown County, Texas**

**Trial Court Cause No. CR20089**

## M E M O R A N D U M   O P I N I O N

The jury convicted Reginald Hawkins of delivery of less than one gram of cocaine in a drug-free zone. Appellant pleaded true to both enhancement allegations. The jury found the enhancement allegations to be true and assessed Appellant's punishment at confinement for life. The trial court sentenced Appellant accordingly. We affirm.

*Issues on Appeal*

Appellant does not challenge the sufficiency of the evidence to support his conviction. Appellant presents two issues for review. In his first issue, Appellant contends that the trial court erred by overruling his objections and by denying his requests for mistrial after the State asked witnesses improper questions that invited speculation about extraneous offenses. In his second issue, Appellant contends that the trial court erred by allowing the prosecutor to make improper jury arguments in the guilt/innocence and punishment phases.

*Background*

Although Appellant does not challenge the sufficiency of the evidence, we will briefly summarize the facts to provide context for the issues on appeal. In January 2009, William Gandy was working as a cooperating individual with Brown County law enforcement officers. On January 24, 2009, Brownwood Police Detective Bruce Spruill contacted Gandy to see whether he could set up a drug purchase. Gandy went to Teresa Graves's house. Graves called Appellant, and Appellant agreed to meet Gandy at the McDonald's restaurant in Brownwood to sell him cocaine. Before going to McDonald's, Gandy met with Detective Spruill and Early Police Detective Shawn Dibrell. Detective Dibrell searched Gandy and Gandy's car to make sure that he was not in possession of any illegal drugs. Detective Dibrell gave Gandy $200 to purchase the cocaine. Detective Spruill equipped Gandy with a hidden video camera.

Detective Dibrell rode with Gandy in Gandy's car to McDonald's. Gandy got out of the car. He saw Appellant in the parking lot. Appellant and Gandy went into the restroom inside McDonald's. While there, Gandy gave Appellant $200, and in exchange, Appellant gave Gandy crack cocaine.

*Extraneous Offense Issue*

In his first issue, Appellant contends that the State repeatedly asked witnesses improper questions that invited "hearsay and speculation by the witnesses and jury regarding extraneous offenses during the guilt/innocence phase of the trial." Appellant states in his brief that "the State repeatedly attempted to create in the minds of the jury the impression that the delivery of controlled substances had actually been a regular and ongoing practice of the Appellant for several months prior to the instance with which he was actually charged." The allegedly improper questions occurred during the State's examinations of Detective Spruill and Detective Dibrell.

2

The prosecutor asked Detective Spruill questions relating to how Gandy arranged to purchase cocaine from Appellant on the occasion in question. During that line of questioning, the following exchange took place:

Q. . . . . Was [Gandy] able to contact an individual here in Brown County who could set up the purchase of crack cocaine?

[DEFENSE COUNSEL]: Objection. Hearsay.

THE COURT: Sustained.

Detective Dibrell testified that, although Gandy paid Appellant $200 for the cocaine, Appellant only gave Gandy $40 to $60 worth of cocaine. When Appellant handed Gandy the cocaine, the cocaine was in a pill bottle. The following exchange took place during Detective Dibrell's testimony:

Q. Is it pretty -- tell us, in your experience -- you told us about the experience you have working narcotics cases. How -- is it common for substances to be delivered in things like bottles without lids or little cellophane wrappers and things such as that?

A. Yes. Yes. In fact, being given the bottle, that tells me that more than likely that was the last bit of his supply.

Q. Why is that?

A. Because normally people will carry --

[DEFENSE COUNSEL]: Objection, speculation.

THE COURT: I will sustain.

[DEFENSE COUNSEL]: Ask that the jury be instructed to disregard the last answer.

THE COURT: The jury is so instructed.

[DEFENSE COUNSEL]: Request a mistrial.

THE COURT: Denied.

The prosecutor asked Detective Dibrell follow-up questions in an effort to show that, based on his experience working narcotics cases, Detective Dibrell could answer questions about the pill bottle without speculating. During that questioning, Detective Dibrell again gave the opinion

3

that the fact that Appellant gave Gandy the pill bottle indicated that Appellant was at the end of his supply of cocaine. Appellant did not object to the prosecutor's follow-up questions to Detective Dibrell. Nor did Appellant object to Detective Dibrell's answers to the questions.

Gandy set up the purchase of cocaine from appellant on the occasion in question with Graves's help. Detective Dibrell testified that he had been to Graves's house on business more than once. The following exchange then took place:

Q. And we can't get into other things, but do you have any other business other than being a law enforcement officer?

A. No, sir.

[DEFENSE COUNSEL]: Objection, Your Honor. That's suggestive questioning there and irrelevant, prejudicial materials.

THE COURT: What is the relevance of this inquiry?

[PROSECUTOR]: Explaining from what there was being discussed on the tape. There was no objection as to the admissibility of the tape. They were discussing this Teresa on the tape. The testimony has come in that is where the initial deal was set up from.

THE COURT: I'll overrule the objection. You may answer.

Q. So, that is -- Teresa is a person you are familiar with?

A. Yes.

On appeal, Appellant complains that the above three instances of questioning by the prosecutor invited the witnesses and jury to speculate about Appellant's commission of extraneous offenses. During the guilt/innocence phase of a trial, the admissibility of extraneous offense evidence is governed by Rule 404(b) of the Rules of Evidence. TEX. R. EVID. 404(b); *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1991); *Gately v. State*, 321 S.W.3d 72, 81–82 (Tex. App.—Eastland 2010, no pet.). Appellant did not object at trial on the basis of Rule 404(b) or on any basis that would put the trial court on notice that he was objecting to the introduction of extraneous offense evidence. To preserve error for appellate review, the complaining party must make a timely, specific objection in the trial court and obtain a ruling on the objection. TEX. R. APP. P. 33.1(a); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002); *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995). At trial, as shown above,

4

Appellant lodged only hearsay, speculation, and relevancy objections to the questions. In making his speculation objection to Detective Dibrell's testimony about the pill bottle, Appellant did not assert that the testimony should be excluded as inadmissible extraneous offense evidence. Relevancy, speculation, and hearsay objections do not preserve error under Rule 404(b) with respect to extraneous offense evidence. *Medina v. State*, 7 S.W.3d 633, 643 (Tex. Crim. App. 1999); *Camacho v. State*, 864 S.W.2d 524, 533 (Tex. Crim. App. 1993); *Phelps v. State*, 999 S.W.2d 512, 519 (Tex. App.—Eastland 1999, pet. ref'd). In addition, the issue on appeal must comport with the objection that was made at trial. *Wilson*, 71 S.W.3d at 349; *Broxton*, 909 S.W.2d at 918. Because Appellant failed to raise a Rule 404(b) objection at trial, he failed to preserve his first issue for appeal.

However, even assuming that Appellant's trial objections preserved error on his extraneous offense claim, Appellant cannot succeed on his first issue. As set forth above, the prosecutor asked Detective Spruill whether Gandy was able to contact an individual who could set up a cocaine purchase. This question did not relate to an extraneous offense. Rather, it related to the circumstances that led to Gandy's purchase of cocaine from Appellant in this case. Additionally, the trial court sustained Appellant's hearsay objection to the question. Appellant took no action after the trial court sustained his objection. Because he obtained all the relief he requested from the trial court, he cannot complain on appeal. *Cook v. State*, 858 S.W.2d 467, 473 (Tex. Crim. App. 1993); *Chapman v. State*, 349 S.W.3d 241, 247–48 (Tex. App.—Eastland 2011, pet. ref'd).

Detective Dibrell testified that Appellant was likely at the end of his supply because he gave Gandy the pill bottle. The prosecutor then asked Detective Dibrell, "Why is that?" The trial court sustained Appellant's speculation objection to this question and then, at Appellant's request, instructed the jury to disregard Detective Dibrell's last answer. The trial court denied Appellant's request for a mistrial. In response to follow-up questions by the prosecutor, Detective Dibrell explained the bases for his opinion, and he restated his opinion that Appellant giving the pill bottle to Gandy indicated that Appellant was at the end of his cocaine supply. The testimony of Detective Dibrell showed that his opinion was based on his experience working narcotics cases, not on speculation. Additionally, Appellant did not object to the prosecutor's follow-up questions about the pill bottle or to Detective Dibrell's answers to those questions.

5

Therefore, Appellant did not preserve for review his complaint about this testimony. *Hudson v. State*, 675 S.W.2d 507, 511 (Tex. Crim. App. 1984).

Appellant lodged a relevancy objection after the prosecutor asked Detective Dibrell about his prior dealings with Graves. The trial court overruled the objection. Detective Dibrell then testified that he was familiar with Graves. This testimony was relevant to explain the circumstances that led to Gandy's purchase of cocaine from Appellant in this case. Detective Dibrell's testimony about Graves did not implicate Appellant in any extraneous offenses.

Appellant also complains that, during cross-examination, Detective Dibrell interjected further speculation that Appellant had committed extraneous offenses. Appellant did not object to any of this testimony. Therefore, Appellant did not preserve his complaint for appellate review. Rule 33.1(a); *Wilson*, 71 S.W.3d at 349; *Broxton*, 909 S.W.2d at 918.

For the above reasons, Appellant did not preserve his first appellate issue for review. Additionally, the record does not show that the trial court erred in making its evidentiary rulings or by denying a mistrial. Appellant's first issue is overruled.

*Jury Argument*

In his second issue, Appellant contends that the trial court erred by allowing the prosecutor to make improper jury arguments. Appellant contends that the prosecutor engaged in improper jury argument in the guilt/innocence phase by "attempting to switch the burden of proof." Proper jury argument generally falls within four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008); *Chapman*, 349 S.W.3d at 246.

The prosecutor waived opening jury argument. Therefore, Appellant's counsel argued first. Appellant's counsel argued that, based on the evidence, there were "reasonable alternative explanations," other than a drug transaction, for Appellant being at McDonald's. The prosecutor responded to this argument in his closing argument:

> [PROSECUTOR]: Now, is it, then, by any circumstances that [Gandy], the drug addict, knows who [Appellant] is? You know, because, they can say, "Well, there is this big hole in the State's case. That's what they are telling you, right? And can say over and over and over again, "Hey, there is all of these other reasonable alternatives. . . . So, if I tell you enough, "Hey, there is a reasonable alternative, there is a reasonable alternative," maybe you will come up with it, because the evidence sure doesn't. You see the difference there?

. . . I asked y'all yesterday. . . . "Will y'all make me this one promise?" Okay, "Y'all promise me that you will not get up here and speculate about all of these what-ifs when you get back in there to that room."

[DEFENSE COUNSEL]: Objection, Your Honor. The State is trying to switch the burden of proof. The State still has the burden to prove their case beyond a reasonable doubt.

THE COURT: I'll overrule the objection, but the jury is instructed about the burden of proof and it does remain clearly and fully on the State.

You may proceed.

[PROSECUTOR]: Absolutely. And I accept that burden, but I'm responding to his argument about all of these other reasonable alternatives, right?

Viewed in context, the prosecutor's argument was a proper response to Appellant's counsel's argument that "reasonable alternative explanations" existed for Appellant's presence at McDonald's. Therefore, the trial court did not err by overruling Appellant's objection to the argument. Although the trial court overruled the objection, the trial court instructed the jury that the State had the burden of proof, and the prosecutor immediately acknowledged that the State had the burden. Had the prosecutor's argument been improper, the trial court's instruction would have removed any potential harm caused by the argument.

Appellant also contends that the prosecutor made improper arguments about extraneous offenses during his closing arguments in the guilt/innocence phase and in the punishment phase. However, Appellant did not object to any of the prosecutor's statements at either phase on the ground that they constituted improper comments on extraneous offenses. Therefore, Appellant failed to preserve error on this issue. *Estrada v. State*, 313 S.W.3d 274, 303 (Tex. Crim. App. 2010); *Threadgill v. State*, 146 S.W.3d 654, 670 (Tex. Crim. App. 2004); *Chapman*, 349 S.W.3d at 247. While Appellant did object to some of the prosecutor's comments on other grounds, Appellant's extraneous offense complaint on appeal does not comport with the grounds raised in his trial objections. Accordingly, Appellant's trial objections were insufficient to preserve error on his appellate complaint. *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009).

Additionally, we have reviewed the prosecutor's jury arguments at both phases of trial in their entirety. Based on our review, we cannot conclude that the complained-of statements

amounted to improper comments about extraneous offenses. Appellant's second issue is overruled.

*This Court's Ruling*

The judgment of the trial court is affirmed.


TERRY McCALL

JUSTICE


March 7, 2013

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.