PD-0646-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 7/8/2015 7:46:48 PM
Accepted 7/9/2015 4:37:55 PM
ABEL ACOSTA
CLERK

**PD-0646-15**

# IN THE
# COURT OF CRIMINAL APPEALS OF TEXAS

**EMMANUEL ARMENDARIZ,**
*Appellant*

**v.**

**THE STATE OF TEXAS,**
*Appellee*

## On Appeal from

## Court of Appeal Number 08-13-00125-CR

## PETITION FOR DISCRETIONARY REVIEW

**Veronica Teresa Lerma**
SBOT No.    24062846
vtlerma@gmail.com

1417 Montana Avenue
El Paso, Texas 79902
Tel.: 915.533.4779
Fax: 915.533.7236

**Eduardo N. Lerma, Sr.**
SBOT No. 12221300
enl1417@aol.com

**Law Offices of Eduardo N. Lerma, Sr.**
1417 Montana Avenue
El Paso, Texas 79902
T: 915.533.0177
F: 915.533.7236

*Attorneys for Appellant Emmanuel Armendariz*

FILED IN
COURT OF CRIMINAL APPEALS

July 9, 2015

ABEL ACOSTA, CLERK

## IDENTITY OF PARTIES AND COUNSEL

**EMMANUEL ARMENDARIZ**          *Appellant*

 **Eduardo N. Lerma, Sr.**          *Appellant's Attorney at Trial and on Appeal*
 1417 Montana Avenue
 El Paso, Texas 79902

 **Veronica Teresa Lerma**          *Appellant's Attorney on Appeal*
 1417 Montana Avenue
 El Paso, Texas 79902

**STATE OF TEXAS**          *Appellee*

 **Jaime Esparza**          *Attorney for Appellee at Trial and on Appeal*
 District Attorney
 34th Judicial District
 SBOT No. 06666450

 **Penny J. Hamilton**          *Attorney for Appellee at Trial*
 SBOT No. 00793887
 Assistant District Attorney

 **Lisa Lynn Clausen**          *Attorney at Appellee Trial*
 SBOT No. 24027931
 Assistant District Attorney
 500 E. San Antonio, 2nd Floor
 El Paso, Texas 79901
 Tel. 915.546.2059
 Fax. 915.533.5520

 **The Hon. Sam Medrano**          *Trial Court*
  409th Judicial District Court

**APPELLATE COURT**
 **The Hon. A. McClure, C.J.,**          *Presiding Justices*
 **Rodriguez and Hughes, JJ.**
 Eighth Court of Criminal Appeals
 500 E. San Antonio Street
 El Paso, Texas 79902

# TABLE OF CONTENTS

Identity of Parties and Counsel..................................................................................2

Table of Contents ......................................................................................................3

Index of Authorities..................................................................................................4

Statement of the Case ...............................................................................................5

Question Presented for Review .................................................................................6

> The appellate court erred when it failed to apply the standard of review required for suppression issues in considering a totality of the circumstances analysis on whether Armendariz effectively waived his rights prior to providing a recorded statement.

Statement of Jurisdiction .........................................................................................7

Statement of Fact and Procedural History................................................................8

Grounds for Review ................................................................................................12

Summary of The Argument.....................................................................................13

Standard Of Review ...............................................................................................14

Arguments And Authorities ....................................................................................16

> I. The appellate court erred when it failed to apply the standard of review required for suppression issues in considering a totality of the circumstances analysis on whether Armendariz effectively waived his rights prior to providing a recorded statement.

Prayer.....................................................................................................................21

Certificate of Service..............................................................................................22

Certificate of Compliance.......................................................................................23

Appendix ................................................................................................................24

# INDEX OF AUTHORITIES

**FEDERAL CASES**

*Fare v. Michael C.*, 442 U.S. 707 (1979) ................................................................. 18, 20
*Johnson v. Zerbst*, 304 U.S. 458 (1938) .........................................................................20
*Miranda v. Arizona*, 384 U.S. 436 (1966) ........................................................... 17, 18, 20
*North Carolina v. Butler*, 441 U.S. 369 (1979) ..............................................................20

**STATE CASES**

*Amador v. State*, 221 S.W.3d 666 (Tex. Crim. App. 2007) ...................................15
*Armendariz v. State*, No. 08-13-00125-CR, 2015 WL 2174481,
    at *1 (Tex. App. – El Paso, May 8, 2015) ............................................... passim
*Gately v. State*, 321 S.W.3d 72 (Tex. App. Eastland 2010) ...................................20
*Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997) ....................................15
*Hill v. State*, 429 S.W.2d 481 (Tex. Crim. App. 1968) ..............................................17
*Joseph v. State*, 309 S.W.3d 20 (Tex. Crim. App. 2010) .........................................18
*Romero v. State*, 800 S.W.2d 539 (Tex. Crim. App. 1990)......................................15
*State v. Elias*, 08-08-00085-CR (Tex. App – El Paso 2012)................................5, 6
*State v. Elias*, 339 S.W.3d 667 (Tex. Crim. App. 2011) .........................5, 13, 15, 18
*State v. Kelly*, 204 S.W.3d 808 (Tex. Crim. App. 2006).........................................16
*Watson v. State*, 762 S.W.2d 591 (Tex. Crim. App. 1988) .....................................19
*Wiede v. State*, 214 S.W.3d 17 (Tex. Crim. App. 2007) ..........................................15

**RULES**

Tex. R. App. Proc. 66.3 ....................................................................................13

## STATEMENT OF THE CASE[1]

Appellant Emmanuel Armendariz pled guilty to a two-count indictment charging him with injury to a child and manslaughter.[2]   The trial court sentenced Armendariz to three years confinement for each count, to run concurrent.[3]

On appeal, the Eighth Court of Appeals affirmed the trial court's ruling on Armendariz's motion to suppress his recorded statement.[4]   The appellate court issued an unpublished opinion in *Armendariz v. State*, No. 08-13-00125-CR, 2015 WL 2174481, at *1 (Tex. App. – El Paso, May 8, 2015). Armendariz appeals to the Texas Court of Criminal Appeals by this Petition for Discretionary Review.

---

1 References to the record are cited as follows:
   *Original Clerk's Record*, is cited as "**CR**" with the pinpoint page number (CR page number);
   *Reporter's Record* (single-volume) is cited as "**RR**" with the pinpoint page number (RR page number), excerpts of cited portions of Reporter's Record attached as Exhibit C in the Appendix.

2 *Armendariz v. State*, No. 08-13-00125-CR, 2015 WL 2174481, at *1 (Tex. App. – El Paso, May 8, 2015).

3 *Id.*

4 *Id.*

## QUESTION PRESENTED FOR REVIEW

The appellate court erred when it failed to apply the standard of review required for suppression issues in considering a totality of the circumstances analysis on whether Armendariz effectively waived his rights prior to providing a recorded statement.

## STATEMENT OF JURISDICTION

The Court of Criminal Appeals of Texas has jurisdiction over this appeal pursuant to Rule 68 of the Texas Rules of Appellate Procedure.

## STATEMENT OF FACT AND PROCEDURAL HISTORY

***Nature of the Case.***

*Statement of Procedure*

Appellant Emmanuel Armendariz pled guilty to a two-count indictment charging him with injury to a child and manslaughter.[5] The trial court sentenced Armendariz to three years confinement for each count, to run concurrent.[6]

On appeal, the Eighth Court of Appeals affirmed the trial court's ruling on Armendariz's motion to suppress his recorded statement.[7] The appellate court issued an unpublished opinion in *Armendariz v. State*, No. 08-13-00125-CR, 2015 WL 2174481, at *1 (Tex. App. – El Paso, May 8, 2015). Armendariz appeals to the Texas Court of Criminal Appeals by this Petition for Discretionary Review.

*Statement of Facts.*

Armendariz picked up his two-year-old son from his mother-in-law before noon on August 27, 2010.[8] After arriving home, Appellant forgot his son was in the truck and left him there while he prepared for an upcoming trip and ran some errands with his father-in-law.[9] Several hours later, Armendariz discovered his

---

5 *Armendariz v. State*, No. 08-13-00125-CR, 2015 WL 2174481, at *1 (Tex. App. – El Paso, May 8, 2015).
6 *Id.*
7 *Id.*
8 *Id.*
9 *Armendariz v. State*, No. 08-13-00125-CR, 2015 WL 2174481, at *1, 2 (Tex.

8

son was still in the truck.[10]  The child died.[11]  That evening around 9 p.m., the police obtained a video-recorded statement.[12]

The trial court held a suppression hearing to determine, among other things, whether Armendariz's recorded statement should be suppressed.[13]  Following the hearing, the trial court entered findings of fact and conclusions of law, including a finding that when the police detective met with Armendariz to take his recorded statement, "at the time the defendant was not under arrest."[14]  The trial court entered a related conclusion of law stating: "The Court finds that [Armendariz] was not under arrest when he provided the recorded statement to Detective Varela."[15]

At the suppression hearing, Socorro Police Department Detective Javier Varela testified he recorded the interrogation and testified that during interrogation Armendariz was under arrest.[16]  Detective Varela was the only State's witness who testified to having any participation with the interrogation, the other witnesses, Detective Rafael Chavez III and Detective Santibanez, of the El Paso

---

App. – El Paso, May 8, 2015).
10  *Id.*
11  *Id.*
12  *Id.*
13  *Id.*
14  *Id.*
15  *Id.*
16  2 RR 39:16-21.

Sherriff's Department, did not testify to any participation in the interrogation.

Detective Varela testified he approached Armendariz to "mirandize him and then take a statement from him" at the police substation[17] "at 9:10 p.m. of that same day"[18] (referencing August 27, 2010). Shortly after the interrogation, the El Paso Sherriff's department took charge of the case.[19]

*Facts and Conclusions of Law Before the Trial Court.*

The trial court made the following pertinent findings of fact and conclusion of law (in pertinent part):

5.      The affidavit in support of probable cause to issue the warrant for the defendant's home was based on information provided to Detective Chavez on August 27, 2010[,] from an investigation conducted by Socorro Police Department and The El Paso Sherriff's Department in which the defendant provided a statement that he has left the deceased child in the vehicle after picking him up at his mother-in-laws house. The defendant stated that he was at Speaking Rock and then went to his mother-in-law's house. The defendant then went home and says he forgot the deceased child was in the vehicle. The father found the deceased child inside the vehicle at approximately 1800 hours. Evidence in plain view of the vehicle indicates the deceased child attempted to open the rear left door and window of the vehicle. *[sic]*

. . .

10.      Detective Varela met with defendant Emmanuel Armendariz and at the time the defendant was not under arrest.

---

17  2 RR 32:1-9.
18  2 RR 36:23-25.
19  2 RR 37:8-10.

11.   Detective Varela was in a room containing audio and video equipment. Emanuel Armendariz provided a statement to Detective Varela that was both audio and visually recorded.

12.   Detective Varela read the defendant Emmanuel Armendariz his rights and asked if he was willing to waive his rights and speak with him. Defendant Emmanuel Armendariz elected to waive his rights and speak with Detective Varela.

. . .

LEGAL CONCLUSIONS

. . .

10.   The [trial court] finds that Emmanuel Armendariz was not under arrest when he provided the recorded statement to Detective Varela.

11.   The [trial court] finds that Emmanuel Armendariz intentionally, knowingly and voluntarily waived his rights when he provided the recorded statement to Detective Varela.

12.   The [trial court] finds that the statement made by Emmanuel Armendariz was voluntary and complies with the provisions of Texas Code of Criminal Procedure Section 38.22.

13.   The [trial court] find that the arrest of the defendant Emmanuel Armendariz was pursuant to a valid arrest warrant."[20]

---

20  CR 015-018.

## GROUNDS FOR REVIEW

The Eighth Court of Appeals decision conflicts with established Texas Criminal Appeals Court precedent. Here, the appellate court's resolution of the suppression issue is not "based on the reality of what happened at the trial court level, but rather on appellate assumptions that may be entirely fictitious."[21] The Court of Criminal Appeals' intervention is necessary to apply the appropriate standard of review.

This Court should GRANT this petition for discretionary review because the appellate court should afford almost total deference to a trial court's determination of the historical facts that the record supports.[22]

---

21 *State v. Elias*, 339 S.W.3d 667, 673-74 (Tex. Crim. App. 2011).
22 *State v. Elias*, 339 S.W.3d 667, 673-74 (Tex. Crim. App. 2011). *See also* Tex. R. App. Proc. 66.3.

## SUMMARY OF THE ARGUMENT

The appellate court erred when it failed to apply the standard of review required for suppression issues in considering a totality of the circumstances analysis on whether Armendariz effectively waived his rights prior to providing a recorded statement.

The appellate court abused its discretion by failing to review the "totality of the circumstances" or make a determination as to the requisite level of Armendariz's comprehension of his rights prior to waiver.   The appellate court conducted a limited review of the video entered into evidence and noted their review of the video recording is "limited because in answering the issue of a knowing and voluntary waiver, [the appellate court] must analyze Detective Varela's demeanor in asking the questions and [Armendariz's] demeanor in answering those questions."[23]

---

23  *Armendariz*, 2015 WL 2174481, at *1.

## STANDARD OF REVIEW

An appellate court will review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review.[24]    The appellate court must view the evidence in light most favorable to the trial court's ruling.[25]    In reviewing the trial court's decision, the appellate court does not engage in its own factual review.[26]    The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.[27]    The reviewing court, therefore will give almost total deference to the trial court's ruling on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor; and, (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.[28]    But when application-of-law-to-fact questions do not turn on the credibility and demeanor of

---

24 *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).
25 *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007).
26 *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).
27 *Wiede*, 214 S.W.3d at 24; *Elias*, 339 S.W.3d at 673 ("Upon request of the losing party on a motion to suppress evidence, the trial court shall state its 'essential findings' we mean 'findings of fact and conclusions of law adequate to provide an appellate court with a basis upon which to review the trial court's application of the law to the facts."    This requirement assures that appellate resolution of the suppression issue 'is based on the reality of what happened [at the trial court level] rather than on [appellate] assumptions that may be entirely fictitious.').
28 *Amador*, 221 S.W.3d at 673.

the witnesses, the trial court's rulings on those questions are reviewed *de novo*.[29]

When the trial court makes explicit findings, the reviewing court will determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact-findings.[30]

---

29 *Id.*
30 *State v. Kelly*, 204 S.W.3d 808, 818-819 (Tex. Crim. App. 2006).

**I.    The appellate court erred when it failed to apply the standard of review required for suppression issues in considering a totality of the circumstances analysis on whether Armendariz effectively waived his rights prior to providing a recorded statement.**

The appellate court abused its discretion by failing to review the "totality of the circumstances" or make a determination as to the requisite level of Armendariz's comprehension of his rights prior to waiver.    The appellate court conducted a limited review of the video entered into evidence and noted that their review of the video recording is "limited because in answering the issue of a knowing and voluntary waiver, [the appellate court] must analyze Detective Varela's demeanor in asking the questions and [Armendariz's] demeanor in answering those questions."[31]

After review of the video, the appellate court found that "the totality of the circumstances surrounding the interrogation shows [Armendariz's] waiver was voluntary.    [Armendariz] nodded in the affirmative when asked whether he was giving his statement of his own free will."

It is the State's burden of showing a defendant knowingly, intelligently, and

---

31 *Armendariz*, 2015 WL 2174481, at *1, 2.

voluntarily waived his *Miranda* rights.[32]  The standard is not to determine whether there is an explicit waiver of the *Miranda* rights, but whether a person does so knowingly, intelligently, and voluntarily.[33]  First, the relinquishment of the right must be voluntary in the sense that it is the product of a free and deliberate choice rather than intimidation, coercion, or deception.  Second, the waiver must have been made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.[34]  Only if the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude the *Miranda* rights have been waived.[35]  The "totality-of-the-circumstances approach" requires the consideration of "all the circumstances surrounding the interrogation," including the defendant's experience, background, and conduct.[36]

In the present case, Armendariz did not knowingly, intelligently, and voluntarily waive his *Miranda* rights.  Here, the appellate court's resolution of the suppression issue is not "based on the reality of what happened at the trial court

---

32  *Miranda*, 384 U.S. at 444; *Hill v. State*, 429 S.W.2d 481, 486 (Tex. Crim. App. 1968).

33  *Joseph v. State*, 309 S.W.3d 20 (Tex. Crim. App. 2010).

34  *Moran v. Burbine*, 475 U.S. 412, 421 (1986); *Joseph*, 309 S.W.3d at 25.

35  *Moran*, 475 U.S. at 421; *Joseph*, 309 S.W.3d at 25 (quoting *Fare v. Michael C.,* 442 U.S. 707, 725 (1979)).

36  *Joseph*, 309 S.W.3d at 25.

17

level, but rather on appellate assumptions that may be entirely fictitious."[37]   The

appellate court assumes:

> "[W]e can *assume* the trial court concluded that there was
> nothing about Detective Varela's tone or manner that was
> so overbearing as to render [Armendariz's] statement
> involuntary.   Further, we can *assume* the trial court
> concluded that [Armendariz's] demeanor indicated that
> he understood what was going on and knowingly and
> intelligently waived his rights."[38]

In its totality of the circumstances analysis, the appellate court stands on

assumptions for which it does not have a factual basis.

At the suppression hearing, the State entered into evidence the recorded

statement.   In that recorded statement, Armendariz does not verbally

acknowledge he understood his rights,[39] rather the questions continue by the

police interrogator.[40]   Nor was there any written acknowledgement entered into

evidence such as a written waiver or Miranda card.   Of course, waivers can be

express or implied,[41] but "a valid waiver will not be presumed simply from the

silence of the accused after warnings are given or simply from the fact that a

confession was in fact eventually obtained."[42]   The question to determine if an

---

37 *State v. Elias*, 339 S.W.3d 667, 673-74 (Tex. Crim. App. 2011).
38 *Armendariz*, 2015 WL 2174481, at *1 (emphasis added).
39 2 RR 41:12-24.
40 *Id.*
41 *Watson v. State*, 762 S.W.2d 591, 601 (Tex. Crim. App. 1988).
42 *Miranda*, 384 U.S. at 475.

accused waived his *Miranda* rights is not whether he made an explicit waiver, but whether he did so knowingly, intelligently, and voluntarily.[43] The State did not prove that Armendariz possessed the requisite level of comprehension prior to waiver.

Other circumstances demonstrate the coercive nature of Armendariz's recorded statement. For instance, the police interrogator conducted the interrogation on the same date, only hours from when Armendariz learned his child died. Armendariz's state of mind to make such a waiver and understand his decision only hours from learning his child died is severely coercive in nature. Armendariz, during this period of time, was not free to leave the police station and, according to Detective Varela, Armendariz was under arrest.[44]

The appellate court must inquire into the totality of the circumstances surrounding the interrogation, to ascertain whether the accused in fact knowingly and voluntarily decided to forego his rights to remain silent and to have the assistance of counsel.[45] There is a heavy burden upon the State to demonstrate waiver,[46] and any evidence that the accused was threatened, tricked, or cajoled into

---

43 *Gately v. State*, 321 S.W.3d 72 (Tex. App. Eastland 2010).
44 2 RR 39:16-23.
45 *Fare v. Michael C.*, 442 U.S. at 725,. *see North Carolina v. Butler*, 441 U.S. 369, 374-375 (1979); *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938).
46 *See Miranda*, 384 U.S at 475.

a waiver will . . . show that a defendant did not voluntarily waive his privilege.[47] The stark and disturbing facts show that Armendariz was relatively inexperienced, grieving, and in an emotional state of mind. These factors demonstrate how easily experienced police offices can overbear a citizen's free will and the significant risk it poses.

The appellate court was without the benefit of such findings and without guidance to make a totality of circumstances review. The trial court's findings of fact are devoid of any totality of the circumstances inquiry, and the State failed to prove an effective waiver.

After assessing its own limited review, the appellate court abused its discretion in failing to consider the totality of the circumstances. This Court should reverse the trial court's ruling and reform the trial court's judgment.

---

47 *Id.* at 476.

## PRAYER

Because the appellate court erred in its review, Appellant Emmanuel Armendariz seeks that this Court reverse the appellate court's decision, and reverse the appellate court's judgment.   Appellant Armendariz respectfully requests this Court to GRANT review of his petition.

Respectfully submitted

*/s/ Eduardo N. Lerma, Sr.*
**Eduardo N. Lerma, Sr.**
SBOT No. 12221300
enl1417@aol.com

Law Offices of Eduardo N. Lerma
1417 Montana Avenue
El Paso, Texas 79902-5016
Tel.: (915) 533-0177
Fax: (915) 533-7236

**Veronica Teresa Lerma**
SBOT No.   24062846
vtlerma@gmail.com
1417 Montana Avenue
El Paso, Texas 79902-5016
Tel.: (915) 533-4779
Fax: (915) 533-7236
***Attorneys for Appellant***
***Emmanuel Armendariz***

## CERTIFICATE OF SERVICE

I certify that on July 8, 2015, a true and correct copy of Appellant's Petition for Discretionary Review was served on counsel as listed below pursuant to Texas Rule of Appellate Procedure 9.5.

**Jaime E. Esparza, District Attorney**
500 E. San Antonio, Ste. 201
El Paso, TX 79901
   *via personal delivery*

**State Prosecuting Attorney**
P.O. Box 12405
Austin, Texas 78711
v*ia regular first-class mail*

**Emmanuel Armendariz**
   *via personal delivery*

/s/ *Eduardo N. Lerma, Sr.*
**Eduardo N. Lerma, Sr.**
SBOT No. 12221300
enl1417@aol.com

22

## CERTIFICATE OF COMPLIANCE

I certify that this document was produced on a computer using Microsoft Mac 2012 and contains 1660 words, as determined by the computer software's word-count function, excluding the sections of the document listed in Texas Rule of Appellate Procedure 9.4(i)(1). A brief and response filed in the court of appeals must not exceed 15,000 words. TRAP 9.1(i)(2)(B).

The parts of the documents that are excluded are:

[1]  The caption
[2]  The identity of parties and counsel.
[3]  The statement regarding oral argument.
[4]  The table of contents.
[5]  The index of authorities.
[6]  The statement of the case.
[7]  The statement of the issues presented.
[8]  The statement of jurisdiction.
[9]  The statement of procedural history.
[10] The signature block
[11] The proof of service
[12] The certification.
[13] The certificate of compliance.
[14] The appendix

The Font used in this document is Times New Roman, and the size of the font for the body and footnote is 14.

 /s/ **Veronica Teresa Lerma**
Veronica Teresa Lerma
Texas Bar No.   24062846
*Attorney for Appellant*

23

# APPENDIX

*Exhibit A*:   *Armendariz v. State*, No. 08-13-00125-CR, 2015 WL 2174481, at *1 (Tex. App. – El Paso, May 8, 2015).

*Exhibit B*:   Trial Court's Findings of Fact and Conclusions of Law.

*Exhibit C*:   Selected Reporter's Record Excerpts

*Exhibit D*:   Judgment and Opinion by the Court of Appeals, Eighth District

*Exhibit E*:   Judgment and Conviction by the trial court

**Exhibit A**
Armendariz v. State, No. 08-13-00125-CR
2015 WL 2174481, at *1 (Tex. App. – El Paso, May 8, 2015).

2015 WL 2174481
Only the Westlaw citation
is currently available.

SEE TX R RAP RULE 47.2
FOR DESIGNATION AND
SIGNING OF OPINIONS.

(DO NOT PUBLISH)
Court of Appeals of Texas,
El Paso.

Emmanuel Armendariz, Appellant,
v.
The State of Texas, Appellee.

No. 08–13–00125–
CR    |    May 8, 2015

Appeal from the 409th District Court of El Paso County, Texas (TC#20100D06116)

**Attorneys and Law Firms**

Eduardo N. Lerma, for Emmanuel Armendariz.

John L. Davis, Jaime E. Esparza, for The State of Texas.

Before McClure, C.J., Rodriguez, and Hughes, JJ.

*OPINION*

STEVEN L. HUGHES, Justice

**\*1** Appellant Emmanuel Armendariz pleaded guilty to a two-count indictment charging him with injury to a child and manslaughter. The trial court sentenced Appellant to three years' confinement for each count, to run concurrently. Appellant appeals the trial court's refusal to suppress his recorded statement. He asserts the trial court erroneously found that he was *not* in custody at the time he provided his recorded statement, and complains the trial court failed to conduct a totality-of-the-circumstances review and hold the State to its burden to prove he effectively waived his rights. We conclude there is no reversible error and affirm.

**BACKGROUND**

Appellant picked up his two-year-old son from his mother-in-law before noon on August 27, 2010. After arriving home, Appellant forgot his son was in the truck and left him there while he prepared for an upcoming trip to Las Vegas and ran some errands with his father-in-law. Several hours later, Appellant discovered his son was still in the truck. The child had died. That evening around 9 p.m., Appellant provided a video-recorded statement to the police.

The trial court held a suppression hearing to determine, among other things, whether Appellant's recorded statement should be suppressed. Following the hearing, the trial court entered findings of fact and conclusions of law, including a finding that when the police detective met with Appellant to take his recorded statement, "at the time the defendant was not under arrest." The court entered a related

conclusion of law stating: "The Court finds that [Appellant] was not under arrest when he provided the recorded statement to Detective Varela." Ultimately, the trial court concluded "that Emmanuel Armendariz intentionally, knowingly and voluntarily waived his rights when he provided the recorded statement to Detective Varela[,]" and that Appellant's recorded statement was voluntary and "complies with the provisions of Texas Code of Criminal Procedure Section 38.22."

## DISCUSSION

### Standard of Review

We review a trial court's ruling refusing to suppress evidence for an abuse of discretion. *Crain v. State,* 315 S.W.3d 43, 48 (Tex.Crim.App.2010); *Ramos v. State,* 245 S.W.3d 410, 417–18 (Tex.Crim.App.2008). In reviewing the trial court's decision, we review the evidence in the light most favorable to the trial court's ruling. *State v. Kelly,* 204 S.W.3d 808, 818 (Tex.Crim.App.2006). We afford almost total deference to a trial court's determination of historical facts, but review pure questions of law de novo. *Alford v. State,* 358 S.W.3d 647, 652 (Tex.Crim.App. 2012); *see Montanez v. State,* 195 S.W.3d 101, 109 (Tex.Crim.App.2006). Likewise, we give almost total deference to a trial court's resolution of mixed questions of law and fact if those questions turn

on the credibility and demeanor of witnesses. *Alford,* 358 S.W.3d at 652. However, if credibility and demeanor are not necessary to the resolution of a mixed question of law and fact, we review the question de novo. *See id.*; *Young v. State,* 283 S.W.3d 854, 873 (Tex.Crim.App.2009). This same deferential standard of review applies to a trial court's determination of historical facts, demeanor, and credibility even when that determination is based on a video recording. *State v. Duran,* 396 S.W.3d 563, 570 (Tex.Crim.App.2013). The trial court's ruling will be upheld if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Ramos,* 245 S.W.3d at 418.

### Finding and Conclusion that Appellant was Not Under Arrest

**\*2** In Issue One, Appellant contends the trial court abused its discretion in finding and concluding he was *not* under arrest when he gave his recorded statement.

At the suppression hearing, Detective Varela of the Socorro Police Department testified that Appellant was under arrest at the time he took Appellant's recorded statement. Detective Chavez of the El Paso Sheriff's Department also testified that Appellant was under arrest at the Socorro Police station when he first contacted Appellant. Moreover, Detective Chavez's partner, Detective Santibanez, testified Appellant was under arrest when

he arrived at the Socorro Police station after 9 p.m. Despite this testimony, the trial court entered a finding of fact that when Detective Varela met with Appellant, he "was not under arrest," and entered a conclusion of law that Appellant "was not under arrest when he provided the recorded statement to Detective Varela." The trial court also concluded Appellant's recorded statement was voluntary and complied with Article 38.22 of the Texas Code of Criminal Procedure.

### *Analysis*

The State concedes the trial court's legal conclusion that Appellant was "not under arrest" has no basis in the record and is without support. We agree with the State there is no basis in the record for the finding and conclusion that Appellant was not under arrest when he gave his statement. Detectives Varela, Chavez, and Santibanez each testified that Appellant was under arrest when they met with him.

The State also argues, however, that the trial court's erroneous finding is not dispositive; it is merely entitled to no deference. We agree. Normally if the court's findings are supported by the record, we are not at liberty to disturb them, and we will only address whether the trial court improperly applied the law to the facts. *State v. Wood,* 828 S.W.2d 471, 474 (Tex.App.–El Paso 1992, no pet.). When, however, a trial court's findings are not supported by the

record, we do not defer to those findings. *See Garcia v. State,* 919 S.W.2d 370, 379 (Tex.Crim.App.1994) (deference not given to trial court's suppression-hearing findings that were not supported by record on appeal); *Derichsweiler v. State,* 301 S.W.3d 803, 812 (Tex.App.–Fort Worth 2009) (trial court's finding of fact after suppression hearing was not supported by the record and was not entitled to deference), *rev'd on other grounds,* 348 S.W.3d 906 (Tex.Crim.App.2011). Because there is no evidence to support the trial court's finding and conclusion that Appellant was not under arrest at the time he provided his oral statement, we give the finding and conclusion no deference.

The real question then is the impact, if any, of this erroneous finding and conclusion. Appellant's reasoning is hard to follow in this regard, but it hinges on Article 38.22 and its requirements.[1] Appellant appears to contend that because Article 38.22 applies only to statements made as a result of a custodial interrogation,[2] the trial court's finding and conclusion that he was *not* under arrest at the time he gave his statement somehow conflict with the trial court's conclusion that his recorded statement was voluntary and complied with Article 38.22. Appellant apparently asserts that this conflict somehow invalidates the trial court's conclusion that he knowingly and voluntarily waived his rights. On this basis, Appellant requests that we reverse and reform the judgment.

**\*3** We are at a loss to see how the trial court's determination had any effect on Appellant's rights. If Appellant was in custody, he was entitled to all the protections provided by Article 38.22, and his recorded statement was admissible only if it was made knowingly and voluntarily. But, even if Appellant was *not* in custody, he was still entitled to a determination whether his statement was voluntary, since the mandate in Article 38.22 that statements be voluntary applies to both an accused's custodial and noncustodial statements. *Oursbourn v. State,* 259 S.W.3d 159, 171 (Tex.Crim.App.2008).

In any event, we conclude that because the uncontroverted evidence establishes Appellant was under arrest at the time of his statement, he was entitled to the Article 38.22 protections. Consequently, there is no conflict with the trial court's conclusion that Appellant's recorded statement was voluntary and complies with Article 38.22. Appellant is not entitled to reversal or reformation of the judgment. We simply proceed to determine if the evidence supports the trial court's conclusion that Appellant's statement was made voluntarily.

## Knowing, Intelligent, and Voluntary Waiver

In Issue Two, Appellant contends the trial court erroneously failed to consider the totality of the circumstances in its review

and to hold the State to its burden to prove he effectively waived his rights.

At the suppression hearing, Detective Varela testified he advised Appellant of his rights during Appellant's recorded statement, and that Appellant indicated that he understood his rights and agreed to waive them. Detective Varela explained that he did not threaten or coerce Appellant to provide a statement nor promise Appellant anything in return. Detective Varela stated that Appellant did not appear to be under the influence of any drug or alcohol at the time of his recorded statement, and that Appellant never asked for an attorney or that the interview be stopped. Appellant was never denied the use of a restroom, or food, or cigarettes.

Appellant's recorded statement was admitted into evidence for purposes of the suppression hearing. The recording shows Detective Varela informing Appellant he is going to read him his rights and asking Appellant to inform him if he has any questions about his rights. In response, Appellant nods his head up and down. Detective Varela then proceeds to inform Appellant of his right to remain silent and that anything he says can be used against him, and the video shows Appellant indicating his understanding of this right by nodding his head in assent and stating "yeah." When Varela informs Appellant of his right to counsel and to have counsel present during questioning, Appellant interrupts and asks "What are you guys doing right now?" Detective Varela explains they

will soon be talking about the case but that now he is reading Appellant his rights "so that that way you'll know"; Appellant again interjects "But you guys are going to start asking questions, right?" Appellant states, "I mean, there's nothing wrong but I'm just saying, I don't want to say something that's going to fuck my shit up." Detective Varela responds that he understands and explains "What I want to know is if you understand that right to counsel." Appellant nods his head up and down, and states "I understand." Detective Varela continues the warnings and informs Appellant of his right to have an attorney appointed prior to questioning if Appellant is unable to afford an attorney. Appellant again affirmatively nods his head up and down. When Detective Varela asks Appellant whether he understands that he can stop the interview at any time if he decides to answer questions without an attorney, Appellant nods his head up and down, puts his head in hands, and answers, "Yes, sir." Finally, when Appellant is asked whether he is making this statement "out of your own free will," Appellant again affirmatively nods his head up and down.

 **\*4** Appellant then proceeds to respond to questions about the incident, often speaking in the narrative for extended periods of time, so much so that Detective Varela at times informs Appellant "I might stop and ask you some questions." At one point, after speaking in the narrative for a time, Appellant asks, "What do I do now?" The other officer in the room, Officer Juarez, responds,

"I can't answer you that." After another lengthy narrative from Appellant, Officer Juarez explains: "We've ... pretty much asked you whatever questions we needed to find out. Is there something that you think we need to know ... something that we haven't asked? Something you may want to say at this time?" Appellant shakes his head back and forth in the negative, and the interview is concluded. The entire recorded interview lasted slightly under fifteen minutes. During this time, Appellant never requested counsel and never asked that the interview be stopped. During the interview, Appellant is seated and not restrained in any way. Appellant and the officers speak in English, and on a few occasions, Appellant uses Spanish terminology.

### *Limited Review of Video Recording*

We note that our review of the video recording in particular is somewhat limited because in answering the issue of a knowing and voluntary waiver, we must analyze Detective Varela's demeanor in asking the questions and Appellant's demeanor in answering those questions. The trial court concluded from its review of the video recording that Appellant's waiver was voluntary. And we can assume the trial court concluded that there was nothing about Detective Varela's tone or manner that was so overbearing as to render Appellant's statement involuntary. Further, we can assume the trial court concluded that Appellant's demeanor indicated that he understood what was

going on and knowingly and intelligently waived his rights. We are required to give almost total deference to the trial court's determination of demeanor even when that determination is based on a video recording. *See Duran,* 396 S.W.3d at 570. Applying this "almost total deference" standard, we conclude that the trial court did not abuse its discretion in finding and concluding that Appellant's statement was knowingly, intelligently, and voluntarily given.

### *Analysis*

As a general rule, a determination whether a statement was voluntarily rendered is analyzed by examining the totality of the circumstances. *Arizona v. Fulminante,* 499 U.S. 279, 285–86, 111 S.Ct. 1246, 1252, 113 L.Ed.2d 302 (1991); *see Delao v. State,* 235 S.W.3d 235, 239 (Tex.Crim.App.2007). It is the State's burden to show that a defendant knowingly, intelligently, and voluntarily waived his rights under *Miranda v. Arizona,* 384 U.S. 436, 444–45, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966),[3] and Article 38.22 of the Texas Code of Criminal Procedure. *Joseph v. State,* 309 S.W.3d 20, 24 (Tex.Crim.App.2010).

In this regard, the Court of Criminal Appeals has reiterated " 'that neither a written nor an oral express waiver is required' " before a statement is admissible under the mandates of Article 38.22. *Id.* (quoting *Watson v. State,* 762 S.W.2d 591, 601 (Tex.Crim.App.1988));

*Barefield v. State,* 784 S.W.2d 38, 40–41 (Tex.Crim.App.1989)(noting that the oral confession statute does not require an "express verbal statement from an accused that he waives his rights prior to giving the statement"), *overruled on other grounds, Zimmerman v. State,* 860 S.W.2d 89, 94 (Tex.Crim.App.1993). Rather, a waiver of one's Article 38.22 rights may be " 'inferred from the actions and words of the person interrogated.' " *Joseph,* 309 S.W.3d at 24–25 (quoting *North Carolina v. Butler,* 441 U.S. 369, 373, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979)). But that waiver must still be knowingly, intelligently, and voluntarily made. *Joseph,* 309 S.W.3d at 25.

**\*5** In evaluating whether a waiver is knowingly, intelligently, and voluntarily made, we employ a two-part test, asking: (1) whether the relinquishment of the right was voluntary by determining whether it was the product of a free and deliberate choice rather than intimidation, coercion, or deception; and (2) whether the waiver was made with full awareness of the nature of the rights being abandoned and the consequences of the decision to abandon it. *Id.* at 25 (citing *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)). "Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Moran,* 475 U.S. at 421. In reviewing the totality of the circumstances, we may consider the

defendant's background, experience, and conduct. *Joseph,* 309 S.W.3d at 25 (citing *Fare v. Michael C.,* 442 U.S. 707, 725, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979)).

The totality of the circumstances surrounding the interrogation shows Appellant's waiver was voluntary. Appellant nodded in the affirmative when asked whether he was giving his statement of his own free will. Immediately after Detective Varela informed Appellant of his rights, Appellant repeatedly indicated that he understood those rights and immediately and willingly participated in the fifteen-minute interrogation. In fact, Appellant was eager to tell his story, forcing Detective Varela to advise Appellant he may have to interrupt Appellant to pose questions. The recording shows that Appellant never asked to stop the interrogation. At the suppression hearing, Detective Varela testified that he did not threaten or coerce Appellant's statement, nor promise anything to Appellant in return. Further, the record does not show any evidence of intimidation or coercion, such as resorting to physical or psychological pressure to elicit statements, or making promises that could have possibly jeopardized the voluntariness of Appellant's statement. The parties remained calm throughout the entire interrogation process, and Appellant freely explained the events of the day, how he found his son, and why he thought he had forgotten about his son in his truck.

We also conclude that the totality of the circumstances demonstrates Appellant's waiver was made with full awareness of both the nature of the rights being abandoned and the consequences of the decision to abandon them. Appellant was given all the required warnings mandated by Article 38.22, including that Appellant was not required to say anything and could stop the interview at any time, and after each question Appellant was asked if he understood his rights. Appellant consistently answered in the affirmative, either by nodding his head up and down or through an affirmative statement indicating his understanding. Appellant then freely answered all the questions posed, and provided extensive narratives on occasion without any prompting for him to do so. With the exception of a few Spanish terms uttered by Appellant, all questions, answers, and narratives were stated in English.

As the Court of Criminal Appeals noted in *Joseph,* "[t]he warnings read to Appellant made him fully aware of the rights set forth in *Miranda* and Article 38.22, as well as the consequences of abandoning those rights." *Joseph,* 309 S.W.3d at 27 (citations omitted). By indicating his understanding of the rights and then freely answering the questions without ever asking the interview to cease, Appellant's conduct undoubtedly demonstrated his awareness of his rights and his knowing waiver of those rights. Based on the totality of the circumstances, the trial court could reasonably infer a knowing waiver from

Appellant's words and actions. Both the testimony at the suppression hearing and the recorded interview establish that Appellant knowingly, intelligently, and voluntarily waived his rights.

**\*6** Appellant contends the trial court did not conduct a totality-of-the-circumstances review and asserts that the trial court did not enter a proper finding. We observe, however, that the trial court indicated it was going to review the recorded interrogation carefully and then included among its legal conclusions "that Emmanuel Armendariz intentionally, knowingly and voluntarily waived his rights when he provided the recorded statement to Detective Varela [,]" and "that the statement made by Emmanuel Armendariz was voluntary and complies with the provisions of Texas Code of Criminal Procedure Section 38.22." This demonstrates that in making its decision, the trial court considered both the testimony from the hearing and the content of Appellant's recorded statement.

The recorded statement contained the requisite warnings informing Appellant of his rights, and the record demonstrates that Appellant knowingly, intelligently, and voluntarily waived those rights. Consequently, Appellant's recorded statement was admissible, and the trial court did not abuse its discretion in denying Appellant's motion to suppress. Issues One and Two are overruled.

## CONCLUSION

The trial court's judgment is affirmed.

## All Citations

Not Reported in S.W.3d, 2015 WL 2174481

## Footnotes

1    Article 38.22 provides that no oral statement of an accused made as a result of a custodial interrogation shall be admissible against the accused in a criminal proceeding unless certain requirements have been satisfied, including that prior to the statement, but during the recording, the accused is given his *Miranda* warnings and the accused knowingly, intelligently, and voluntarily waives those rights. *See* TEX.CODE CRIM.PROC.ANN. art. 38.22, §§ 2(a), 3 (West Supp. 2014).

2    Article 38.22 applies only to oral statements made as a result of a custodial interrogation. TEX.CODE CRIM. PROC.ANN. art. 38.22, § 3; *see also id.* at § 5 (nothing in Article 38.22 precludes the admission of a statement "that does not stem from custodial interrogation").

3    "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until

he has consulted with an attorney and thereafter consents to be questioned." *Miranda,* 384 U.S. at 444–45, 86 S.Ct. at 1612.

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

**Exhibit B**
Trial Court's Findings of Fact and Conclusions of Law.

IN THE 409TH DISTRICT COURT
EL PASO COUNTY, TEXAS

| | |
|---|---|
| THE STATE OF TEXAS | § |
| | § |
| vs. | §     No. 20100D06116 |
| | § |
| EMMANUEL ARMENDARIZ | § |

2012 APR 27   7 48

EL PASO COUNTY, TEXAS

BY _____

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### FACTUAL FINDINGS

1. The defendant was charged by indictment with manslaughter and injury to a child December 15, 2010, in El Paso County, Texas.
2. El Paso Sheriff Department Detective Rafael Chavez III prepared applications for search warrants for Manny Malique Armendariz.
3. The search warrant for the vehicle was issued by Judge David Bonilla on September 2, 2010 and authorized both the search of the 1996 Nissan Pathfinder bearing Texas registration V68FKR, VIN #:JN8AR05Y1TW028713, and the seizure of Latent prints from the interior and exterior of the vehicle; Biological evidence to include bodily fluids from the interior and exterior of the vehicle; DNA swabbings; Narcotics/Narcotic Paraphernelia; Photographs of the vehicle.
4. The search warrant for the vehicle was executed on September 4, 2010. The items seized at that location were: Baby car seat; Red 'BeBe' sweater with possible vomit stains; Baby white sock; Rolling Zig-Zag papers; Two packets with white Mexican brand pills; White envelope with card and a one folded dollar bill with white powdery substance; grey shirt with possible vomit stains; empty liquor bottle; Baby white NIKE shoes; DNA swab of left rear door interior; DNA swab of left rear door window interior; DNA swab of left rear floorboard; DNA swab of right rear door window interior; DNA swab right rear door window interior; Latent palm print from left rear interior window; Latent prints from right rear interior window; Photograph of adult female and male child; Photographs of interior and exterior of vehicle.
5. The affidavit in support of probable cause to issue the warrant for the defendant's home was based on information provided to Detective Chavez on August 27, 2010 from an investigation conducted by Socorro Police Department and The El Paso Sherriff's Department in which the defendant provided a statement that he had left the deceased child in the vehicle after picking him up at his mother-in-laws house. The defendant stated that he was at Speaking Rock and then went to his mother-in-laws house to pick up the deceased child. The defendant then went home and says he forgot the deceased child was in the vehicle. The deceased child was found inside the vehicle by the father at

approximately 1800 hours. Evidence in plain view of the vehicle indicates the deceased child attempted to open the rear left door and window of the vehicle.

6. The search warrant for Manny Malique Armendariz, date of birth 10/16/07 was issued by Judge David Bonilla on September 2, 2010.

7. The search warrant Manny Malique Armendariz was executed on September 2, 2010. The items seized at that location were: Right hand palm print; Left hand palm print; Fingerprints of right hand.

8. The affidavit in support of probable cause to issue the warrant for the defendant's home was based on information provided to Detective Chavez on August 27, 2010 from an investigation conducted by Socorro Police Department and The El Paso Sherriff's Department in which the defendant provided a statement that he had left the deceased child in the vehicle after picking him up at his mother-in-laws house. The defendant stated that he was at Speaking Rock and then went to his mother-in-laws house to pick up the deceased child. The defendant then went home and says he forgot the deceased child was in the vehicle. The deceased child was found inside the vehicle by the father at approximately 1800 hours. A palm print and smeared fingerprints were located in the interior of the rear left window of the vehicle the defendant stated he had left the deceased child in.

9. A written consent to search person and remove body substances was obtained by Detective Louis Santibanez from the defendant on August 27, 2010.

10. Detective Varela met with defendant Emmanuel Armendariz and at the time the defendant was not under arrest.

11. Detective Varela was in a room containing audio and video equipment. Emmanuel Armendariz provided a statement to Detective Varela that was both audio and visually recorded.

12. Detective Varela read the defendant Emmanuel Armendariz his rights and asked if he was willing to waive his rights and speak with him. Defendant Emmanuel Armendariz elected to waive his rights and speak with Detective Varela.

13. The State and the defense have agreed to not use any evidence collected from the residence.

14. The State and the defense have agreed not to use blood draw evidence.

15. The State and the defense have agreed not to use any statements made by the defendant prior to the DVD statement made to Detective Varela.

16. Detective Chavez testified at the motion to suppress hearing on April 8, 2011 that he obtained the search warrants for the vehicle and Manny Malique Armendariz.

17. Detective Santibanez testified at the motion to suppress hearing on April 8, 2011 that he obtained the written consent to search person and remove body substances from the defendant on August 27, 2010.

18. Detective Varela testified in the motion to suppress hearing on April 8, 2011 that he and Officer Juarez were present when the recorded statement from the defendant was obtained on August 27, 2010.

19. The defendant Emmanuel Armendariz was arrested pursuant to warrant number M10W7083 for the offense of Injury to a Child on the 28th day of August, 2010.

## LEGAL CONCLUSIONS

1. The Court has reviewed the application and affidavit for the search warrant for the vehicle. The Court finds that sufficient probable cause existed for the issuance of the search warrant for the vehicle.
2. The Court finds that the search warrant for the vehicle is not a general search warrant and it complies with Article 18.01 of the TEXAS CODE OF CRIMINAL PROCEDURE.
3. The Court finds that the search warrant for the vehicle falls under both Article 18.02 (9) and Article 18.02 (10) of the TEXAS CODE OF CRIMINAL PROCEDURE.
4. The Court finds that Judge David Bonilla was authorized to issue the search warrant for the vehicle as the judge of a statutory created court; The El Paso Criminal Law Magistrate Court.
5. The Court has reviewed the application and affidavit for the search warrant for Manny Malique Armendariz. The Court finds that sufficient probable cause existed for the issuance of the search warrant for Manny Malique Armendariz.
6. The Court finds that the search warrant for Manny Malique Armendariz is not a general search warrant and it complies with Article 18.01 of the TEXAS CODE OF CRIMINAL PROCEDURE.
7. The Court finds that the search warrant for Manny Malique Armendariz falls under both Article 18.02 (9) and Article 18.02 (10) of the TEXAS CODE OF CRIMINAL PROCEDURE.
8. The Court finds that Judge David Bonilla was authorized to issue the search warrant for the vehicle as the judge of a statutory created court; The El Paso Criminal Law Magistrate Court.
9. The Court finds that the searches of the vehicle and Manny Malique Armendariz were pursuant to valid warrants and were legal.
10. The Court finds that Emmanuel Armendariz was not under arrest when he provided the recorded statement to Detective Varela.
11. The Court finds that Emmanuel Armendariz intentionally, knowingly and voluntarily waived his rights when he provided the recorded statement to Detective Varela.
12. The Court finds that the statement made by Emmanuel Armendariz was voluntary and complies with the provisions of Texas Code of Criminal Procedure Section 38.22.
13. The Court finds that the arrest of the defendant Emmanuel Armendariz was pursuant to a valid arrest warrant.

Signed on this the __27__ day of April, 2012

Honorable Sam Medrano
Judge 409th Judicial District

00 018

**Exhibit D.1**

Court's Notice of Defendant's Right to Appeal

**Exhibit C**
Selected Reporter's Record Excerpts

REPORTER'S RECORD
VOLUME 2 OF 5 VOLUMES
COURT OF APPEALS CAUSE NUMBER 08-13-00125-CR
TRIAL COURT CAUSE NO. 20100D06116

THE STATE OF TEXAS )    IN THE DISTRICT COURT

)

)

)

vs. )

)    EL PASO COUNTY, TEXAS

)

)

EMMANUEL ARMENDARIZ )

)

)    409TH JUDICIAL DISTRICT

---------------------------------------

MOTION TO SUPPRESS

---------------------------------------

On the 8th day of April, 2011, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable SAM MEDRANO, JR., Judge presiding, held in El Paso, El Paso County, Texas:

Proceedings reported by machine shorthand utilizing computer-assisted realtime transcription.

Q.   Where did you first have contact with him?

A.   At our substation.

Q.   What was the purpose of your contact with the defendant?

A.   Initially to Mirandize him and then take a statement from him.

Q.   So am I understanding you gave him his Miranda rights?

A.   Yes.

Q.   And did you, in fact, take a statement from the defendant?

A.   Yes.

Q.   Do you see the individual that you took the statement from in the courtroom today?

A.   Yes.

Q.   Can you please point to him and identify something he is wearing?

A.   The gentleman to my right wearing the striped shirt -- blue with red stripes.

          MS. CLAUSEN:  May the record reflect that the witness has identified the defendant?

          THE COURT:  Yes, ma'am.

Q.   (BY MS. CLAUSEN)  Where did you meet with him? Was it in an office or was it just out with everybody else?

A. No.

Q. To your knowledge was he under the influence of any narcotic drug or alcohol to where he could not communicate with you or could not understand you?

A. No.

Q. To your knowledge was the vehicle ever searched?

A. No.

MS. CLAUSEN: Pass the witness.

THE COURT: Mr. Lerma.

MR. LERMA: Yes, Your Honor. Thank you.

CROSS-EXAMINATION

BY MR. LERMA:

Q. What time did you -- state your name again, sir.

A. Javier Varela.

Q. And where are you employed?

A. Socorro Police Department.

Q. Did you respond initially at 1803 -- to the alleged crime scene?

A. I was at home so initially I go to the station to pick up my unit and then I head out to the scene.

Q. And when was it -- what specific time did you interrogate Mr. Armendariz?

A. 9:10 p.m. of that same day.

Q. Is this before the sheriff's department got there?

A. Yes, sir.

Q. And you were the only one present during the interrogation?

A. No, sir. There was -- Officer Juarez was in the same room during the interrogation.

Q. After you finished your interrogation did the sheriff's department then take over the case?

A. Shortly after, yes, sir.

Q. Why was that, sir?

A. I would not know. That's determined by our chief of police.

Q. Is there some type of policy that the sheriff's department takes over a major crime -- incident?

MS. CLAUSEN: Object to relevance, Your Honor.

THE COURT: Overruled. Answer if you know.

A. I don't know the exact policy. I do know that in certain types of cases they are called out to assist us. In some cases they take the case.

Q. Who called the sheriff's department?

A. I would not know.

Q. So it could have been your chief?

A.   It just varies on the case.  I mean, it's not for every type of case.  Like I said, it's not a specific criteria that I know of, but I investigate the case and if somebody in our management decides then they call the sheriff.

Q.   Do you feel you have the capacity to investigate this type of case?

MS. CLAUSEN:  Objection, relevance.

THE COURT:  Sustained.

Q.   (BY MR. LERMA)  Were you present during the blood draw?

A.   No, sir.

Q.   In fact you didn't participate in that, did you, sir?

A.   No, sir.

Q.   So that your only participation was that you interrogated him and you videotaped the interrogation?

A.   Yes, sir.

Q.   And all during this time Mr. Armendariz was under arrest?

A.   Yes, sir, he was detained.

Q.   Was he under arrest?

A.   Yes.

MR. LERMA:  That's all I have, Your Honor.

THE COURT:  Any other questions?

STATE OF TEXAS                    )

COUNTY OF EL PASO                 )


     I, Natalie A. Martinez, Official Court Reporter in and for the 409th District Court of El Paso County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

     I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.

     I further certify that the total cost for the preparation of this Reporter's Record is $_____ and was paid/will be paid by _____.

     WITNESS MY OFFICIAL HAND this the _____ day of _____, 2013.


                         _____
                         NATALIE MARTINEZ, Texas CSR# 8352
                         409th District Court
                         El Paso, TX  79901 (915) 834-8209
                         Expires:  December 31, 2014

**Exhibit D**
Judgment and Opinion by the Court of Appeals, Eighth District



COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| EMMANUEL ARMENDARIZ, | § | No. 08-13-00125-CR |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | |
| | § | 409th District Court |
| THE STATE OF TEXAS, | § | |
| | § | of El Paso County, Texas |
| Appellee. | § | |
| | § | (TC#20100D06116) |

## J U D G M E N T

The Court has considered this cause on the record and concludes there was no error in the

judgment. We therefore affirm the judgment of the court below. This decision shall be certified

below for observance.

IT IS SO ORDERED THIS 8TH DAY OF MAY, 2015.

STEVEN L. HUGHES, Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.



COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| EMMANUEL ARMENDARIZ, | § | |
| | | No. 08-13-00125-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 409th District Court |
| THE STATE OF TEXAS, | § | |
| | | of El Paso County, Texas |
| Appellee. | § | |
| | | (TC#20100D06116) |
| | § | |

## **O P I N I O N**

Appellant Emmanuel Armendariz pleaded guilty to a two-count indictment charging him with injury to a child and manslaughter. The trial court sentenced Appellant to three years' confinement for each count, to run concurrently. Appellant appeals the trial court's refusal to suppress his recorded statement. He asserts the trial court erroneously found that he was *not* in custody at the time he provided his recorded statement, and complains the trial court failed to conduct a totality-of-the-circumstances review and hold the State to its burden to prove he effectively waived his rights. We conclude there is no reversible error and affirm.

## **BACKGROUND**

Appellant picked up his two-year-old son from his mother-in-law before noon on August

27, 2010. After arriving home, Appellant forgot his son was in the truck and left him there while he prepared for an upcoming trip to Las Vegas and ran some errands with his father-in-law. Several hours later, Appellant discovered his son was still in the truck. The child had died. That evening around 9 p.m., Appellant provided a video-recorded statement to the police.

The trial court held a suppression hearing to determine, among other things, whether Appellant's recorded statement should be suppressed. Following the hearing, the trial court entered findings of fact and conclusions of law, including a finding that when the police detective met with Appellant to take his recorded statement, "at the time the defendant was not under arrest." The court entered a related conclusion of law stating: "The Court finds that [Appellant] was not under arrest when he provided the recorded statement to Detective Varela." Ultimately, the trial court concluded "that Emmanuel Armendariz intentionally, knowingly and voluntarily waived his rights when he provided the recorded statement to Detective Varela[,]" and that Appellant's recorded statement was voluntary and "complies with the provisions of Texas Code of Criminal Procedure Section 38.22."

## DISCUSSION

### Standard of Review

We review a trial court's ruling refusing to suppress evidence for an abuse of discretion. *Crain v. State*, 315 S.W.3d 43, 48 (Tex.Crim.App. 2010); *Ramos v. State,* 245 S.W.3d 410, 417–18 (Tex.Crim.App. 2008). In reviewing the trial court's decision, we review the evidence in the light most favorable to the trial court's ruling. *State v. Kelly,* 204 S.W.3d 808, 818 (Tex.Crim.App. 2006). We afford almost total deference to a trial court's determination of historical facts, but review pure questions of law de novo. *Alford v. State*, 358 S.W.3d 647, 652 (Tex.Crim.App.

2

2012); s*ee Montanez v. State,* 195 S.W.3d 101, 109 (Tex.Crim.App. 2006). Likewise, we give almost total deference to a trial court's resolution of mixed questions of law and fact if those questions turn on the credibility and demeanor of witnesses. *Alford*, 358 S.W.3d at 652. However, if credibility and demeanor are not necessary to the resolution of a mixed question of law and fact, we review the question de novo. *See id*.; *Young v. State*, 283 S.W.3d 854, 873 (Tex.Crim.App. 2009). This same deferential standard of review applies to a trial court's determination of historical facts, demeanor, and credibility even when that determination is based on a video recording. *State v. Duran*, 396 S.W.3d 563, 570 (Tex.Crim.App. 2013). The trial court's ruling will be upheld if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Ramos*, 245 S.W.3d at 418.

**Finding and Conclusion that Appellant was Not Under Arrest**

In Issue One, Appellant contends the trial court abused its discretion in finding and concluding he was *not* under arrest when he gave his recorded statement.

At the suppression hearing, Detective Varela of the Socorro Police Department testified that Appellant was under arrest at the time he took Appellant's recorded statement. Detective Chavez of the El Paso Sheriff's Department also testified that Appellant was under arrest at the Socorro Police station when he first contacted Appellant. Moreover, Detective Chavez's partner, Detective Santibanez, testified Appellant was under arrest when he arrived at the Socorro Police station after 9 p.m. Despite this testimony, the trial court entered a finding of fact that when Detective Varela met with Appellant, he "was not under arrest," and entered a conclusion of law that Appellant "was not under arrest when he provided the recorded statement to Detective Varela." The trial court also concluded Appellant's recorded statement was voluntary and

3

complied with Article 38.22 of the Texas Code of Criminal Procedure.

*Analysis*

The State concedes the trial court's legal conclusion that Appellant was "not under arrest" has no basis in the record and is without support. We agree with the State there is no basis in the record for the finding and conclusion that Appellant was not under arrest when he gave his statement. Detectives Varela, Chavez, and Santibanez each testified that Appellant was under arrest when they met with him.

The State also argues, however, that the trial court's erroneous finding is not dispositive; it is merely entitled to no deference. We agree. Normally if the court's findings are supported by the record, we are not at liberty to disturb them, and we will only address whether the trial court improperly applied the law to the facts. *State v. Wood*, 828 S.W.2d 471, 474 (Tex.App. – El Paso 1992, no pet.). When, however, a trial court's findings are not supported by the record, we do not defer to those findings. *See Garcia v. State,* 919 S.W.2d 370, 379 (Tex.Crim.App. 1994) (deference not given to trial court's suppression-hearing findings that were not supported by record on appeal); *Derichsweiler v. State*, 301 S.W.3d 803, 812 (Tex.App. –Fort Worth 2009) (trial court's finding of fact after suppression hearing was not supported by the record and was not entitled to deference), *rev'd on other grounds*, 348 S.W.3d 906 (Tex.Crim.App. 2011). Because there is no evidence to support the trial court's finding and conclusion that Appellant was not under arrest at the time he provided his oral statement, we give the finding and conclusion no deference.

The real question then is the impact, if any, of this erroneous finding and conclusion. Appellant's reasoning is hard to follow in this regard, but it hinges on Article 38.22 and its

requirements.[1]  Appellant appears to contend that because Article 38.22 applies only to statements made as a result of a custodial interrogation,[2] the trial court's finding and conclusion that he was *not* under arrest at the time he gave his statement somehow conflict with the trial court's conclusion that his recorded statement was voluntary and complied with Article 38.22.  Appellant apparently asserts that this conflict somehow invalidates the trial court's conclusion that he knowingly and voluntarily waived his rights.  On this basis, Appellant requests that we reverse and reform the judgment.

We are at a loss to see how the trial court's determination had any effect on Appellant's rights.  If Appellant was in custody, he was entitled to all the protections provided by Article 38.22, and his recorded statement was admissible only if it was made knowingly and voluntarily.  But, even if Appellant was *not* in custody, he was still entitled to a determination whether his statement was voluntary, since the mandate in Article 38.22 that statements be voluntary applies to both an accused's custodial and noncustodial statements.  *Oursbourn v. State*, 259 S.W.3d 159, 171 (Tex.Crim.App. 2008).

In any event, we conclude that because the uncontroverted evidence establishes Appellant was under arrest at the time of his statement, he was entitled to the Article 38.22 protections.  Consequently, there is no conflict with the trial court's conclusion that Appellant's recorded statement was voluntary and complies with Article 38.22.  Appellant is not entitled to reversal or reformation of the judgment.  We simply proceed to determine if the evidence supports the trial

---

[1] Article 38.22 provides that no oral statement of an accused made as a result of a custodial interrogation shall be admissible against the accused in a criminal proceeding unless certain requirements have been satisfied, including that prior to the statement, but during the recording, the accused is given his *Miranda* warnings and the accused knowingly, intelligently, and voluntarily waives those rights.  *See* TEX.CODE CRIM.PROC.ANN. art. 38.22, §§ 2(a), 3 (West Supp. 2014).

[2] Article 38.22 applies only to oral statements made as a result of a custodial interrogation.  TEX.CODE CRIM. PROC.ANN. art. 38.22, § 3; *see also id.* at § 5 (nothing in Article 38.22 precludes the admission of a statement "that does not stem from custodial interrogation").

court's conclusion that Appellant's statement was made voluntarily.

**Knowing, Intelligent, and Voluntary Waiver**

In Issue Two, Appellant contends the trial court erroneously failed to consider the totality of the circumstances in its review and to hold the State to its burden to prove he effectively waived his rights.

At the suppression hearing, Detective Varela testified he advised Appellant of his rights during Appellant's recorded statement, and that Appellant indicated that he understood his rights and agreed to waive them. Detective Varela explained that he did not threaten or coerce Appellant to provide a statement nor promise Appellant anything in return. Detective Varela stated that Appellant did not appear to be under the influence of any drug or alcohol at the time of his recorded statement, and that Appellant never asked for an attorney or that the interview be stopped. Appellant was never denied the use of a restroom, or food, or cigarettes.

Appellant's recorded statement was admitted into evidence for purposes of the suppression hearing. The recording shows Detective Varela informing Appellant he is going to read him his rights and asking Appellant to inform him if he has any questions about his rights. In response, Appellant nods his head up and down. Detective Varela then proceeds to inform Appellant of his right to remain silent and that anything he says can be used against him, and the video shows Appellant indicating his understanding of this right by nodding his head in assent and stating "yeah." When Varela informs Appellant of his right to counsel and to have counsel present during questioning, Appellant interrupts and asks "What are you guys doing right now?" Detective Varela explains they will soon be talking about the case but that now he is reading Appellant his rights "so that that way you'll know"; Appellant again interjects "But you guys are

6

going to start asking questions, right?" Appellant states, "I mean, there's nothing wrong but I'm just saying, I don't want to say something that's going to fuck my shit up." Detective Varela responds that he understands and explains "What I want to know is if you understand that right to counsel." Appellant nods his head up and down, and states "I understand." Detective Varela continues the warnings and informs Appellant of his right to have an attorney appointed prior to questioning if Appellant is unable to afford an attorney. Appellant again affirmatively nods his head up and down. When Detective Varela asks Appellant whether he understands that he can stop the interview at any time if he decides to answer questions without an attorney, Appellant nods his head up and down, puts his head in hands, and answers, "Yes, sir." Finally, when Appellant is asked whether he is making this statement "out of your own free will," Appellant again affirmatively nods his head up and down.

Appellant then proceeds to respond to questions about the incident, often speaking in the narrative for extended periods of time, so much so that Detective Varela at times informs Appellant "I might stop and ask you some questions." At one point, after speaking in the narrative for a time, Appellant asks, "What do I do now?" The other officer in the room, Officer Juarez, responds, "I can't answer you that." After another lengthy narrative from Appellant, Officer Juarez explains: "We've . . . pretty much asked you whatever questions we needed to find out. Is there something that you think we need to know . . . something that we haven't asked? Something you may want to say at this time?" Appellant shakes his head back and forth in the negative, and the interview is concluded. The entire recorded interview lasted slightly under fifteen minutes. During this time, Appellant never requested counsel and never asked that the interview be stopped. During the interview, Appellant is seated and not restrained in any way.

7

Appellant and the officers speak in English, and on a few occasions, Appellant uses Spanish terminology.

*Limited Review of Video Recording*

We note that our review of the video recording in particular is somewhat limited because in answering the issue of a knowing and voluntary waiver, we must analyze Detective Varela's demeanor in asking the questions and Appellant's demeanor in answering those questions. The trial court concluded from its review of the video recording that Appellant's waiver was voluntary. And we can assume the trial court concluded that there was nothing about Detective Varela's tone or manner that was so overbearing as to render Appellant's statement involuntary. Further, we can assume the trial court concluded that Appellant's demeanor indicated that he understood what was going on and knowingly and intelligently waived his rights. We are required to give almost total deference to the trial court's determination of demeanor even when that determination is based on a video recording. *See Duran*, 396 S.W.3d at 570. Applying this "almost total deference" standard, we conclude that the trial court did not abuse its discretion in finding and concluding that Appellant's statement was knowingly, intelligently, and voluntarily given.

*Analysis*

As a general rule, a determination whether a statement was voluntarily rendered is analyzed by examining the totality of the circumstances. *Arizona v. Fulminante,* 499 U.S. 279, 285–86, 111 S.Ct. 1246, 1252, 113 L.Ed.2d 302 (1991); *see Delao v. State*, 235 S.W.3d 235, 239 (Tex.Crim.App. 2007). It is the State's burden to show that a defendant knowingly, intelligently, and voluntarily waived his rights under *Miranda v. Arizona*, 384 U.S. 436, 444-45, 86 S.Ct. 1602,

8

1612, 16 L.Ed.2d 694 (1966),[3] and Article 38.22 of the Texas Code of Criminal Procedure. *Joseph v. State*, 309 S.W.3d 20, 24 (Tex.Crim.App. 2010).

In this regard, the Court of Criminal Appeals has reiterated "'that neither a written nor an oral express waiver is required'" before a statement is admissible under the mandates of Article 38.22. *Id.* (quoting *Watson v. State*, 762 S.W.2d 591, 601 (Tex.Crim.App. 1988)); *Barefield v. State*, 784 S.W.2d 38, 40-41 (Tex.Crim.App. 1989)(noting that the oral confession statute does not require an "express verbal statement from an accused that he waives his rights prior to giving the statement"), *overruled on other grounds, Zimmerman v. State*, 860 S.W.2d 89, 94 (Tex.Crim.App. 1993). Rather, a waiver of one's Article 38.22 rights may be "'inferred from the actions and words of the person interrogated.'" *Joseph*, 309 S.W.3d at 24-25 (quoting *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979)). But that waiver must still be knowingly, intelligently, and voluntarily made. *Joseph*, 309 S.W.3d at 25.

In evaluating whether a waiver is knowingly, intelligently, and voluntarily made, we employ a two-part test, asking: (1) whether the relinquishment of the right was voluntary by determining whether it was the product of a free and deliberate choice rather than intimidation, coercion, or deception; and (2) whether the waiver was made with full awareness of the nature of the rights being abandoned and the consequences of the decision to abandon it. *Id.* at 25 (citing *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)). "Only if the

---

[3] " Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned." *Miranda*, 384 U.S. at 444-45, 86 S.Ct. at 1612.

9

'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Moran*, 475 U.S. at 421. In reviewing the totality of the circumstances, we may consider the defendant's background, experience, and conduct. *Joseph*, 309 S.W.3d at 25 (citing *Fare v. Michael C.*, 442 U.S. 707, 725, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979)).

The totality of the circumstances surrounding the interrogation shows Appellant's waiver was voluntary. Appellant nodded in the affirmative when asked whether he was giving his statement of his own free will. Immediately after Detective Varela informed Appellant of his rights, Appellant repeatedly indicated that he understood those rights and immediately and willingly participated in the fifteen-minute interrogation. In fact, Appellant was eager to tell his story, forcing Detective Varela to advise Appellant he may have to interrupt Appellant to pose questions. The recording shows that Appellant never asked to stop the interrogation. At the suppression hearing, Detective Varela testified that he did not threaten or coerce Appellant's statement, nor promise anything to Appellant in return. Further, the record does not show any evidence of intimidation or coercion, such as resorting to physical or psychological pressure to elicit statements, or making promises that could have possibly jeopardized the voluntariness of Appellant's statement. The parties remained calm throughout the entire interrogation process, and Appellant freely explained the events of the day, how he found his son, and why he thought he had forgotten about his son in his truck.

We also conclude that the totality of the circumstances demonstrates Appellant's waiver was made with full awareness of both the nature of the rights being abandoned and the consequences of the decision to abandon them. Appellant was given all the required warnings

10

mandated by Article 38.22, including that Appellant was not required to say anything and could stop the interview at any time, and after each question Appellant was asked if he understood his rights. Appellant consistently answered in the affirmative, either by nodding his head up and down or through an affirmative statement indicating his understanding. Appellant then freely answered all the questions posed, and provided extensive narratives on occasion without any prompting for him to do so. With the exception of a few Spanish terms uttered by Appellant, all questions, answers, and narratives were stated in English.

As the Court of Criminal Appeals noted in *Joseph*, "[t]he warnings read to Appellant made him fully aware of the rights set forth in *Miranda* and Article 38.22, as well as the consequences of abandoning those rights." *Joseph*, 309 S.W.3d at 27 (citations omitted). By indicating his understanding of the rights and then freely answering the questions without ever asking the interview to cease, Appellant's conduct undoubtedly demonstrated his awareness of his rights and his knowing waiver of those rights. Based on the totality of the circumstances, the trial court could reasonably infer a knowing waiver from Appellant's words and actions. Both the testimony at the suppression hearing and the recorded interview establish that Appellant knowingly, intelligently, and voluntarily waived his rights.

Appellant contends the trial court did not conduct a totality-of-the-circumstances review and asserts that the trial court did not enter a proper finding. We observe, however, that the trial court indicated it was going to review the recorded interrogation carefully and then included among its legal conclusions "that Emmanuel Armendariz intentionally, knowingly and voluntarily waived his rights when he provided the recorded statement to Detective Varela[,]" and "that the statement made by Emmanuel Armendariz was voluntary and complies with the provisions of

11

Texas Code of Criminal Procedure Section 38.22." This demonstrates that in making its decision, the trial court considered both the testimony from the hearing and the content of Appellant's recorded statement.

The recorded statement contained the requisite warnings informing Appellant of his rights, and the record demonstrates that Appellant knowingly, intelligently, and voluntarily waived those rights. Consequently, Appellant's recorded statement was admissible, and the trial court did not abuse its discretion in denying Appellant's motion to suppress. Issues One and Two are overruled.

## CONCLUSION

The trial court's judgment is affirmed.


                                        STEVEN L. HUGHES, Justice
May 8, 2015

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)

**Exhibit E**
Judgment and Conviction by the trial court



| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 409TH JUDICIAL DISTRICT COURT |
| | § | |
| v. | § | |
| | § | |
| Armendariz, Emmanuel | § | EL PASO COUNTY, TEXAS |
| | § | |
| STATE ID NO.: 07021556 | § | |

## JUDGMENT OF CONVICTION BY COURT—WAIVER OF JURY TRIAL

| | | | |
|---|---|---|---|
| Judge Presiding: | HON. SAM MEDRANO JR. | Date Judgment Entered: | 04/12/13 |
| Attorney for State: | PENNY HAMILTON | Attorney for Defendant: | EDUARDO LERMA |

Offense for which Defendant Convicted:
**INJ CHILD/ELDERLY/DISABLED RECKLESS BI/MENTAL**

| Charging Instrument: | Statute for Offense: |
|---|---|
| **INDICTMENT** | **22.04 (E) PC** |

Date of Offense:
**08/27/10**

| Degree of Offense: | Plea to Offense: | Findings on Deadly Weapon: |
|---|---|---|
| **2nd Degree Felony** | **GUILTY** | **N/A** |

Terms of Plea Bargain:
**STATE'S RECOMMENDATION**

| Plea to 1st Enhancement Paragraph: | N/A | Plea to 2nd Enhancement/Habitual Paragraph: | N/A |
|---|---|---|---|
| Findings on 1st Enhancement Paragraph: | N/A | Findings on 2nd Enhancement/Habitual Paragraph: | N/A |

| Date Sentence Imposed: | 04/25/13 | Date Sentence to Commence: | 04/25/13 |
|---|---|---|---|

| Punishment and Place of Confinement: | **THREE (3) YEARS INSTITUTIONAL DIVISION, TDCJ** |
|---|---|

**THIS SENTENCE SHALL RUN N/A.**

☐ SENTENCE OF CONFINEMENT SUSPENDED, DEFENDANT PLACED ON COMMUNITY SUPERVISION FOR
**N/A.**

| Fine: | Court Costs: | Restitution: | Restitution Payable to: |
|---|---|---|---|
| N/A | $231.00 | $N/A | ☐ VICTIM (see below)   ☐ AGENCY/AGENT (see below) |

Sex Offender Registration Requirements do not apply to the Defendant. TEX. CODE CRIM. PROC. chapter 62

The age of the victim at the time of the offense was **N/A**.

| | If Defendant is to serve sentence in TDCJ, enter incarceration periods in chronological order. |
|---|---|
| Time Credited: | From **08/28/10** to **08/28/10** From **05/13/11** to **05/24/11** |
| | If Defendant is to serve sentence in county jail or is given credit toward fine and costs, enter days credited below. |
| | **N/A DAYS    NOTES: N/A** |

All pertinent information, names and assessments indicated above are incorporated into the language of the judgment below by reference.

This cause was called for trial in **El Paso** County, Texas. The State appeared by her District Attorney.

**Counsel / Waiver of Counsel (select one)**

☒ Defendant appeared in person with Counsel.

☐ Defendant knowingly, intelligently, and voluntarily waived the right to representation by counsel in writing in open court.



Both parties announced ready for trial. Defendant waived the right of trial by jury and entered the plea indicated above. The Court then admonished Defendant as required by law. It appeared to the Court that Defendant was mentally competent to stand trial, made the plea freely and voluntarily, and was aware of the consequences of this plea. The Court received the plea and entered it of record. Having heard the evidence submitted, the Court found Defendant guilty of the offense indicated above. In the presence of Defendant, the Court pronounced sentence against Defendant.

The Court FINDS Defendant committed the above offense and ORDERS, ADJUDGES AND DECREES that Defendant is GUILTY of the above offense. The Court FINDS the Presentence Investigation, if so ordered, was done according to the applicable provisions of TEX. CODE CRIM. PROC. art. 42.12 § 9.

The Court ORDERS Defendant punished as indicated above. The Court ORDERS Defendant to pay all fines, court costs, and restitution as indicated above.

### Punishment Options (select one)

☒ **Confinement in State Jail or Institutional Division.** The Court ORDERS the authorized agent of the State of Texas or the Sheriff of this County to take, safely convey, and deliver Defendant to the Director, Institutional Division, TDCJ. The Court ORDERS Defendant to be confined for the period and in the manner indicated above. The Court ORDERS Defendant remanded to the custody of the Sheriff of this county until the Sheriff can obey the directions of this sentence. The Court ORDERS that upon release from confinement, Defendant proceed immediately to the Institutional Division, TDCJ. Once there, the Court ORDERS Defendant to pay, or make arrangements to pay, any remaining unpaid fines, court costs, and restitution as ordered by the Court above.

☐ **County Jail—Confinement / Confinement in Lieu of Payment.** The Court ORDERS Defendant immediately committed to the custody of the Sheriff of El Paso County, Texas on the date the sentence is to commence. Defendant shall be confined in the El Paso County Detention Facility for the period indicated above. The Court ORDERS that upon release from confinement, Defendant shall proceed immediately to the El Paso County Detention Facility. Once there, the Court ORDERS Defendant to pay, or make arrangements to pay, any remaining unpaid fines, court costs, and restitution as ordered by the Court above.

☐ **Fine Only Payment.** The punishment assessed against Defendant is for a FINE ONLY. The Court ORDERS Defendant to proceed immediately to the Office of the El Paso County Collections Department. Once there, the Court ORDERS Defendant to pay or make arrangements to pay all fines and court costs as ordered by the Court in this cause.

### Execution / Suspension of Sentence (select one)

☒ The Court ORDERS Defendant's sentence EXECUTED.

☐ The Court ORDERS Defendant's sentence of confinement SUSPENDED. The Court ORDERS Defendant placed on community supervision for the adjudged period (above) so long as Defendant abides by and does not violate the terms and conditions of community supervision. The order setting forth the terms and conditions of community supervision is incorporated into this judgment by reference.

The Court ORDERS that Defendant is given credit noted above on this sentence for the time spent incarcerated.

### Furthermore, the following special findings or orders apply:

Counts I and II to run concurrent.

---

Signed and entered on 04 / 30 / 2013

X _____
JUDGE PRESIDING

Right Thumbprint

Clerk: Rosemary Cruz





| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 409TH JUDICIAL DISTRICT COURT |
| | § | |
| V. | § | |
| | § | |
| Armendariz, Emmanuel | § | EL PASO COUNTY, TEXAS |
| | § | |
| STATE ID NO.: 07021556 | § | |

## JUDGMENT OF CONVICTION BY COURT—WAIVER OF JURY TRIAL

| | | | |
|---|---|---|---|
| Judge Presiding: | HON. SAM MEDRANO JR. | Date Judgment Entered: | 04/12/13 |
| Attorney for State: | PENNY HAMILTON | Attorney for Defendant: | EDUARDO LERMA |

Offense for which Defendant Convicted:
**MANSLAUGHTER**

| | |
|---|---|
| Charging Instrument: **INDICTMENT** | Statute for Offense: **19.04 PC** |

Date of Offense:
**08/27/10**

| | | |
|---|---|---|
| Degree of Offense: **2nd Degree Felony** | Plea to Offense: **GUILTY** | Findings on Deadly Weapon: **N/A** |

Terms of Plea Bargain:
**STATE'S RECOMMENDATION**

| | | | |
|---|---|---|---|
| Plea to 1st Enhancement Paragraph: | **N/A** | Plea to 2nd Enhancement/Habitual Paragraph: | **N/A** |
| Findings on 1st Enhancement Paragraph: | **N/A** | Findings on 2nd Enhancement/Habitual Paragraph: | **N/A** |

| | | | |
|---|---|---|---|
| Date Sentence Imposed: | **04/25/13** | Date Sentence to Commence: | **04/25/13** |

| | |
|---|---|
| Punishment and Place of Confinement: | **THREE (3) YEARS INSTITUTIONAL DIVISION, TDCJ** |

THIS SENTENCE SHALL RUN **N/A**.

☐ SENTENCE OF CONFINEMENT SUSPENDED, DEFENDANT PLACED ON COMMUNITY SUPERVISION FOR **N/A**.

| | | | |
|---|---|---|---|
| Fine: **N/A** | Court Costs: **$231.00** | Restitution: **$N/A** | Restitution Payable to: ☐ VICTIM (see below)    ☐ AGENCY/AGENT (see below) |

Sex Offender Registration Requirements do not apply to the Defendant. TEX. CODE CRIM. PROC. chapter 62

The age of the victim at the time of the offense was **N/A**.

| | |
|---|---|
| Time Credited: | If Defendant is to serve sentence in TDCJ, enter incarceration periods in chronological order. From 08/28/10 to 08/28/10 From 05/13/11 to 05/24/11 |
| | If Defendant is to serve sentence in county jail or is given credit toward fine and costs, enter days credited below. **N/A DAYS    NOTES: N/A** |

All pertinent information, names and assessments indicated above are incorporated into the language of the judgment below by reference.

This cause was called for trial in **El Paso** County, Texas. The State appeared by her District Attorney.

Counsel / Waiver of Counsel (select one)

☒ Defendant appeared in person with Counsel.

☐ Defendant knowingly, intelligently, and voluntarily waived the right to representation by counsel in writing in open court.

00 033



Both parties announced ready for trial. Defendant waived the right of trial by jury and entered the plea indicated above. The Court then admonished Defendant as required by law. It appeared to the Court that Defendant was mentally competent to stand trial, made the plea freely and voluntarily, and was aware of the consequences of this plea. The Court received the plea and entered it of record. Having heard the evidence submitted, the Court found Defendant guilty of the offense indicated above. In the presence of Defendant, the Court pronounced sentence against Defendant.

The Court FINDS Defendant committed the above offense and ORDERS, ADJUDGES AND DECREES that Defendant is GUILTY of the above offense. The Court FINDS the Presentence Investigation, if so ordered, was done according to the applicable provisions of TEX. CODE CRIM. PROC. art. 42.12 § 9.

The Court ORDERS Defendant punished as indicated above. The Court ORDERS Defendant to pay all fines, court costs, and restitution as indicated above.

### Punishment Options (select one)

☒ **Confinement in State Jail or Institutional Division.** The Court ORDERS the authorized agent of the State of Texas or the Sheriff of this County to take, safely convey, and deliver Defendant to the Director, Institutional Division, TDCJ. The Court ORDERS Defendant to be confined for the period and in the manner indicated above. The Court ORDERS Defendant remanded to the custody of the Sheriff of this county until the Sheriff can obey the directions of this sentence. The Court ORDERS that upon release from confinement, Defendant proceed immediately to the Institutional Division, TDCJ. Once there, the Court ORDERS Defendant to pay, or make arrangements to pay, any remaining unpaid fines, court costs, and restitution as ordered by the Court above.

☐ **County Jail—Confinement / Confinement in Lieu of Payment.** The Court ORDERS Defendant immediately committed to the custody of the Sheriff of El Paso County, Texas on the date the sentence is to commence. Defendant shall be confined in the El Paso County Detention Facility for the period indicated above. The Court ORDERS that upon release from confinement, Defendant shall proceed immediately to the El Paso County Detention Facility. Once there, the Court ORDERS Defendant to pay, or make arrangements to pay, any remaining unpaid fines, court costs, and restitution as ordered by the Court above.

☐ **Fine Only Payment.** The punishment assessed against Defendant is for a FINE ONLY. The Court ORDERS Defendant to proceed immediately to the Office of the El Paso County Collections Department. Once there, the Court ORDERS Defendant to pay or make arrangements to pay all fines and court costs as ordered by the Court in this cause.

### Execution / Suspension of Sentence (select one)

☒ The Court ORDERS Defendant's sentence EXECUTED.

☐ The Court ORDERS Defendant's sentence of confinement SUSPENDED. The Court ORDERS Defendant placed on community supervision for the adjudged period (above) so long as Defendant abides by and does not violate the terms and conditions of community supervision. The order setting forth the terms and conditions of community supervision is incorporated into this judgment by reference.

The Court ORDERS that Defendant is given credit noted above on this sentence for the time spent incarcerated.

### Furthermore, the following special findings or orders apply:

Signed and entered on 04 / 30 / 2013

X _____
JUDGE PRESIDING

Right Thumbprint

Clerk: Rosemary Cruz



###########################################

###########################################